**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jose CASTRO, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 2012.

Filed Oct. 5, 2012.

1243

Bradley S. Bridge, Public Defender, Philadelphia, for appellant.

Mary L. Huber, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

OPINION BY LAZARUS, J.:

Jose Castro appeals from his judgment of sentence imposed in the Court of Common Pleas of Philadelphia County on June 22, 2009. Because Castro has satisfied each element of the four-part after-discovered evidence test based on alleged police corruption, we vacate and remand for an evidentiary hearing.

The relevant factual history is as follows. On March 11, 2008, Philadelphia Narcotics Officer Richard Cujdik[1] met with a Confidential Informant, identified only as CI–142, to investigate a home in the Kensington section of Philadelphia for suspected drug activity. Officer Richard Cujdik testified that he searched CI–142 to make sure that he did not have any money or contraband, and provided CI–142 with $20.00 of prerecorded "buy" money. CI–142 went to the residence, had a brief conversation with a person by the name of Yvette Torres at the door and proceeded inside. CI–142 exited the residence a few minutes later with two clear jars with red lids containing a substance alleged to be PCP.

Based on this "buy," Officer Richard Cujdik obtained a search warrant for the residence and returned with other officers to execute the warrant later that day. Officer Richard Cujdik positioned himself at the rear of the property as the other officers approached from the front. When the officers knocked on the front door,

---

1. Officer Richard Cujdik's brother, Jeffrey, is also an officer on the narcotics task force. Because we refer to both officers herein, we address them by their full names.

Officer Richard Cujdik observed Castro exit from the back door and toss a clear plastic baggie into a neighboring yard. The officers apprehended Castro, and Officer Richard Cujdik retrieved the baggie that Castro had tossed from the neighboring yard. Inside of the bag were five clear glass jars. Two of the jars had the same type of red lid as those allegedly bought by CI–142. A subsequent analysis of the substance in each of the seven glass jars (the two from CI–142 and the five from the baggie that Castro tossed) indicated the presence of PCP.

Torres was arrested and searched after Officer Richard Cujdik identified her from the controlled buy with CI–142. The officers recovered $20 in U.S. currency[2] along with a key to the residence. When the officers went inside the home, they discovered two pieces of mail addressed to Castro and Torres at the home address.

Police arrested Castro and charged him with knowing and intentional possession of a controlled substance,[3] possession with intent to deliver a controlled substance,[4] and conspiracy to engage in possession with intent to deliver a controlled substance.[5] Castro proceeded to a bench trial on March 26, 2009. Officer Richard Cujdik was the only witness to testify; the only physical evidence introduced was the unrelated cash and drugs that were recovered. The court determined that the testimony of Officer Richard Cujdik was credible and found Castro guilty of conspiracy to engage in possession with intent to deliver a controlled substance and knowing and intentional possession of a controlled substance; however, the court found Castro not guilty of possession with intent to distribute a controlled substance. On June 22, 2009, the court sentenced Castro to 6 to 23 months' incarceration followed by two years' probation for the conspiracy charge, and a concurrent sentence of 6 to 23 months' incarceration followed by one year of probation for knowing and intentional possession.

On June 24, 2009, Castro filed a post-sentence motion for a new trial based on after-discovered evidence. In his motion, Castro pointed to an article published on March 30, 2009, four days after his trial, in the *Philadelphia Daily News* that alleged corruption and falsification of evidence by Officer Richard Cujdik, Officer Jeffrey Cujdik and other narcotics officers while conducting a drug raid at a corner grocery store in September 2007.[6] On November 6, 2009, the court denied the motion after a brief hearing.

Castro filed a timely notice of appeal and complied with the trial court's order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Pa.R.A.P. 1925(a) opinion on May 17, 2010. In its opinion, the trial court ruled that Castro did not meet the requirements for after-discovered evidence because "the evidence lacks a purpose for admission independent from

**2.** The money recovered from Torres was not the prerecorded "buy money" given to CI–142 by Officer Cujdik.

**3.** 35 P.S. § 780–113(a)(16).

**4.** 35 P.S. § 780–113(a)(30).

**5.** 18 Pa.C.S.A. § 903(a)(1).

**6.** The *Philadelphia Daily News* and *Philadelphia Inquirer* have published numerous articles regarding the alleged misconduct of Officer *Jeffrey* Cujdik and other members of the Narcotics Field Unit since February 2009. However, the March 30, 2009 article was the first to describe the involvement of Officer Richard Cujdik. The officers are now the focus of an investigation by local and federal law enforcement. *See* Wendy Ruderman & Barbara Laker, Video sharpens focus on raid: Store owner's hidden back-up shows cops snipping security-camera wires, *Philadelphia Daily News*, March 30, 2009.

impeaching the credibility of [Officer Richard Cujdik]." Trial Court Opinion, 5/17/2010, at 9; *see Commonwealth v. Chamberlain*, 612 Pa. 107, 30 A.3d 381, 414 (2011) (after-discovered evidence not admissible where sole purpose of evidence is to impeach credibility of witness). On June 24, 2011, a divided panel of this Court vacated Castro's judgment of sentence and remanded Castro's appeal for an evidentiary hearing. *See Commonwealth v. Castro*, 2011 WL 2517017 (Pa.Super.2011) (withdrawn). Following our decision, the Commonwealth filed a petition for *en banc* reargument. On August 25, 2011, we granted the Commonwealth's petition and withdrew the prior panel decision.

On March 21, 2012, Castro filed a substituted brief pursuant to Pa.R.A.P. 2140(a) [7] raising one issue for our review: "Should not this Court remand this matter to the Court of Common Pleas for further proceedings based on after-discovered evidence regarding the corrupt and criminal activities of Police Officer Richard Cujdik, the prosecution's only testifying witness?" Appellant's Substituted Brief, at 3.

In support of his petition for remand, Castro again points to the March 30, 2009 *Philadelphia Daily News* article. Castro does not seek to introduce the news article itself as evidence; [8] rather, he avers that it is the content of what is described in the article that, if proved, would satisfy the after-discovered evidence test. Accordingly, Castro seeks an evidentiary hearing to determine if a new trial is required based on evidence described in the article.

The March 30, 2009 *Philadelphia Daily News* article details several instances of police misconduct by Officer Richard Cujdik, Officer Jeffrey Cujdik and other narcotics officers while conducting a drug raid in September 2007. According to the article, store surveillance video from the day of the raid showed that Officer Richard Cujdik falsified statements in his search warrant application. Notably, Officer Richard Cujdik stated in his warrant application that CI–142 [9] had purchased small ziplock bags from the store on the day of the raid; [10] however, video surveillance from the store showed that no one had purchased or asked about zip lock bags during the time alleged in the warrant application.[11]

The article further stated that when the officers executed the warrant, they systematically cut the wires to the store's security cameras, causing the store owner

7. *See* Pa.R.A.P. 2140 (Brief on Remand or Following Grant of Reargument or Reconsideration).

8. Generally, news articles are inadmissible hearsay. *See Steinhouse v. W.C.A.B. (A.P. Green Services)*, 783 A.2d 352, 356 (Pa. Cmwlth.2001). *But see Reading Nursing Center v. Unemployment Compensation Bd. of Review*, 663 A.2d 270, 273–74 (Pa.Cmwlth.1995) (news articles are admissible when not offered for the truth of the matter asserted).

9. Although the news article does not identify the confidential informant as CI–142, Officer Richard Cujdik did identify the informant as CI–142 in his warrant application.

10. The Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act prohibits the possession with intent to deliver drug para-

phernalia, under circumstances where one knows, or reasonably should know, that it would be used to package or contain a controlled substance in violation of the Act. *See* 35 P.S. § 780–113(a)(33). The Act defines "Drug paraphernalia" broadly to include "containers used, intended for use or designed for use in packaging small quantities of controlled substances." 35 P.S. §§ 780–102(b).

11. The article notes that Officer Richard Cujdik stated in the warrant application that the confidential informant had purchased ziplock bags from the store on two other occasions, but that the store owner was unable to locate the footage from those days.

thousands of dollars in damage, even though the cameras were digital and there was no reason for the officers to believe they would contain any evidence.[12] The store owner claimed that after the surveillance system was disabled, police took $10,000 in cash and cartons of cigarettes from the store without reporting it in police property receipts, and that they vandalized his property. Finally, the article alleged that Officer Richard Cujdik took the keys to the store owner's van and searched it without permission, even though the van was not included in the search warrant. *See* Wendy Ruderman & Barbara Laker, Video sharpens focus on raid: Store owner's hidden back-up shows cops snipping security-camera wires, *Philadelphia Daily News*, March 30, 2009, at 3.

Following the raid, police arrested the store owner and charged him with possession of drug paraphernalia for possession of small ziplock bags. The owner subsequently pleaded no contest before a Philadelphia Municipal Court judge and was sentenced to nine months' probation.

■■■■ Our Supreme Court has set forth the following standard when considering a claim of after-discovered evidence:

> To obtain relief based on after-discovered evidence, appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008). The determination whether an appellant is entitled to a new trial must be made by the trial court at an evidentiary hearing. At the evidentiary hearing, the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa.Super.2010).

The issue of whether a news article may provide the basis for an evidentiary hearing on newly-discovered evidence was recently addressed by this Court in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa.Super.2007) and *Commonwealth v. Estepp*, 17 A.3d 939 (Pa.Super.2011), *appeal dismissed as improvidently granted,* —— Pa. ——, 54 A.3d 22 (2012). Because these cases are relevant to our analysis, we will discuss them in detail.

In *Rivera*, an undercover detective arranged to buy cocaine from the defendant, Carlos Rivera. When it looked like the deal would close, police arrested Rivera and charged him with violations of the Controlled Substances Act.[13] At trial, a laboratory technician for the Commonwealth testified as to the nature and weight of the cocaine as well as the chain of custody. Rivera was subsequently found guilty of possession and possession with intent to deliver a controlled substance.

While on direct appeal, Rivera filed a petition for remand based on newly discovered evidence after the *Philadelphia Inquirer* published an article exposing the laboratory technician as a corrupt witness.

---

**12.** Unbeknownst to the officers, the surveillance system had a backup hard drive that preserved video and audio of the police disabling the security system up until the last camera wire was cut. The article provided a transcript of the audio recording from the surveillance system and a link to the *Philadelphia Daily News* website, which posted three videos of the raid up to the time that police cut the camera cables.

**13.** 35 P.S. §§ 780–101 *et seq.*

Specifically, the article stated that the technician had been arrested for stealing prescription medications from the lab for personal use, which she was supposed to secure as evidence for prosecution.

Applying the four-part after-discovered evidence test, we determined that Rivera was unlikely to have discovered the misconduct prior to the article's publication, that the evidence was not cumulative because veracity of the technician's testimony had not been questioned at trial, and that the evidence could be offered for a non-impeachment purpose because "it calls into serious question the type and amount of drug upon which [Rivera's] conviction and sentence is based." *Rivera, supra* at 359. Accordingly, we remanded for an evidentiary hearing to determine if a new trial was required based on after-discovered evidence.

In *Estepp,* we revisited the issue of newly discovered evidence as it related to the alleged corruption of Officer Richard Cujdik's brother, Officer Jeffrey Cujdik. According to testimony from Estepp's trial, Officer Jeffrey Cujdik received information from a confidential source that Estepp was selling prescription drugs from a residence. Officer Jeffrey Cujdik instructed another informant to make a controlled buy from the residence; the informant returned, handing Officer Jeffrey Cujdik two pills that he had purchased. Based on the controlled purchase, Officer Jeffrey Cujdik obtained a search warrant for the home. When officers executed the warrant, they discovered cocaine and other drugs inside. Police arrested Estepp and he was subsequently convicted of violations of the Controlled Substances Act.

Following his conviction, Estepp filed a motion to remand for an evidentiary hearing to investigate allegations of police misconduct by Officer Jeffrey Cujdik. In his motion, Estepp cited two newspaper articles published in the *Philadelphia Inquirer* and *Philadelphia Daily News* revealing that Officer Jeffrey Cujdik was under federal and state investigation after an informant accused him of falsifying evidence in his narcotics investigations.

In requesting remand for an evidentiary hearing, Estepp cited to this Court's decision in *Rivera, supra.* We acknowledged that, under *Rivera,* newspaper articles may provide the basis for a claim of after-discovered evidence, *see Estepp, supra* at 943 (citing (*Rivera, supra* at 359)), but determined that the particular news articles that Estepp had cited were not sufficient. *Id.* In distinguishing *Rivera,* we noted that Estepp had failed to provide accurate dates for the newspaper articles, and that the articles he had cited merely stated that Officer Jeffrey Cujdik was under *investigation* for alleged misconduct, in contrast with the technician in *Rivera,* who had been arrested.

Although *Estepp* purports to distinguish itself from *Rivera* on the facts, we find it difficult to reconcile their holdings while applying a consistent interpretation of the law. The fact that the appellant in *Estepp* did not provide the dates of the news articles does not appear to be particularly significant given that dates were readily available. Further, we are not convinced that where an article alleges corruption, the absence of an arrest or conviction is dispositive of relief. Rather, we look to the allegations made in the news article to determine whether there is a reasonable likelihood that the verdict would have been different. *See Pagan, supra.* Thus, we decline to apply this Court's reasoning in *Estepp,* and instead rely on our earlier decision in *Rivera.*

Here, as in *Rivera,* Castro has satisfied each element of the after-discovered evidence test based on a post-trial newspaper article. First, the evidence in the article could not have been obtained prior

to trial by reasonable diligence. The *Daily News* article implicating Officer Richard Cujdik in the police corruption scandal was not published until March 30, 2009—four days after Castro's conviction. Although, the *Philadelphia Inquirer* and *Daily News* had published articles on Officer *Jeffrey* Cujdik prior to that date, Castro had no basis for knowing of Officer Richard Cujdik's involvement, and could not have been expected to discover it through reasonable diligence. *See Rivera, supra* at 359 (finding it unlikely that appellant could have discovered criminal activity of witness prior to exposure in news article); *cf. Padillas, supra* at 366–67 (defendant did not exercise due diligence in introducing evidence of drug sale because he could have questioned witness, but did not).

Second, the evidence described in the March 30, 2009 news article is not merely corroborative or cumulative of the evidence presented at trial. At trial, Castro did not attack Officer Richard Cujdik's prior conduct because he had no basis to challenge his credibility. Thus, the evidence may be used to attack the veracity of Officer Richard Cujdik's warrant and the evidence surrounding Castro's arrest. *See Rivera, supra* (evidence is neither corroborative nor cumulative where it may be used to attack credibility of witness who was previously unchallenged).

Third, while the evidence in the Daily News article may be used to impeach the credibility of Officer Richard Cujdik, the evidence will not be used solely for that purpose. The *Daily News* article alleges that Officer Richard Cujdik falsified information in his warrant application by claiming that CI–142—the same confidential informant used to investigate Castro—had purchased drug paraphernalia from the corner grocery store, despite video surveil-

lance showing that no purchase or inquiry was made. Thus, Castro may use this evidence in filing a motion to compel the identity of CI–142 in order to determine whether Officer Richard Cujdik also made false claims in applying for a warrant to search Castro's home. *See Commonwealth v. Hritz*, 444 Pa.Super. 264, 663 A.2d 775, 778 (1995) (trial court may compel disclosure of confidential informant's identity to defendant where disclosure is reasonable, would yield information material to the defense and is in the interests of justice); *Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56, 58 (1998) (disclosure more likely to be in the interest of justice where guilt was based solely on police testimony). Additionally, Castro could use the evidence to file a motion to suppress the evidence recovered from the search.[14]

Finally, the evidence would likely result in a different verdict if a new trial were granted because it shows that Officer Richard Cujdik, the only witness to testify at Castro's trial, engaged in a pattern of fabricating controlled buys in order to procure and execute search warrants. Significantly, the *Daily News* article provided a link to video surveillance tapes that directly contradict statements made in Officer Richard Cujdik's search warrant affidavit. Further, the confidential informant used in applying for that warrant was the same one used to investigate Castro. Thus, there was evidence, independent from the news article itself, to support the allegations of corruption against Officer Richard Cujdik.

In *Estepp, supra*, this Court held that similar news articles could not provide the basis for a claim of after-discovered evidence because the statements in the articles were mere allegations of corruption

---

14. The Commonwealth claims that Castro has not yet secured affidavits or performed any discovery to bolster his position. We find this

argument specious. Even with the subpoena power of the trial court, the deponents will almost certainly be reluctant to testify.

and were not corroborated by an arrest or conviction. We disagree with the *Estepp* panel's suggestion that arrest or conviction is the *sine qua non* of a claim of after-discovered evidence premised on alleged corruption. Where, as here, there is independently verifiable evidence cited within the news article to support the allegations, the defendant seeking relief need not wait for an arrest or conviction to obtain relief. Indeed, on May 20, 2012, the *Philadelphia Inquirer* published another article about the ongoing police corruption investigation in which it was revealed that the City of Philadelphia had settled 21 civil lawsuits against Officers Jeffrey and Richard Cujdik at an average of $40,000 each, and that the FBI investigation into the matter is ongoing. *See* Mark Fazlollah, Joseph A. Slobodzian, and Allison Steele, 21 suits settled in narcotics unit case, *The Philadelphia Inquirer*, May 20, 2012, at A1, A17. Certainly, upon remand, Castro would be entitled to delve into the nature of these allegations against Officer Richard Cujdik.

The issue presently before us speaks to fundamental fairness. Had the news article been published four days before, rather than four days after Castro's trial, he would have almost certainly requested and been granted a continuance to test the allegations. We do not yet know whether Castro will be able to present a sufficient quantum of evidence to warrant vacating his conviction, but the potential for uncovering exculpatory evidence makes it more than probable that a trier of fact would come to a different conclusion. To deny Castro the opportunity to assert a proper defense at this time would exalt form over substance, which this Court declines to do.

Judgment of sentence vacated. Case remanded for an evidentiary hearing on Castro's claim of after-discovered evidence. Jurisdiction relinquished.

STEVENS, P.J., files a Dissenting Opinion in which PANELLA, SHOGAN, and ALLEN, JJ., join.

## DISSENTING OPINION BY STEVENS, P.J.

Although Appellant claims to be entitled to a new trial based on after-discovered evidence, his sole proffer was a newspaper article that contains mere allegations of Officer Richard Cujdik's misconduct which do not constitute evidence. Moreover, as Appellant asks us to speculate on what evidence he will be able to present at an evidentiary hearing, it cannot be determined if this potential "evidence" would be used for any other purpose than to impeach Officer Richard Cujdik's credibility. For these reasons, one must conclude that Appellant failed to satisfy every prong of the after-discovered evidence test. As a result, I respectfully dissent from the Majority's decision to remand the case for an evidentiary hearing.

Our standard of review is limited in the context of a claim of after-discovered evidence:

> After-discovered evidence is the basis for a new trial when it: 1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely for impeaching the credibility of a witness; and 4) is of such nature and character that a new verdict will likely result if a new trial is granted. *Commonwealth v. Boyle*, 533 Pa. 360, 625 A.2d 616, 622 (1993); *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988). Further, the proposed new evidence must be "producible and admissible." *Smith* [518 Pa. at 50], 540 A.2d [at] 263; *Commonwealth v. Scott*, 503 Pa. 624, 470 A.2d 91, 93 (1983).

*Commonwealth v. Chamberlain*, 612 Pa. 107, 30 A.3d 381, 414 (2011).

Appellant claims he is entitled to a new trial based on a newspaper article published in the Philadelphia Daily News on March 30, 2009, four days after he was convicted in this case. In the article, Jose Duran, the owner of a local convenience store, alleged that Philadelphia Police Officer Richard Cujdik and several other officers entered his business and cut the wires to several cameras of his video surveillance system. The article also indicates Duran recovered video footage which allegedly shows the officers cutting the wires to one of the cameras. Although Duran contends the officers removed the cameras to steal thousands of dollars in cash and merchandise from his store, the article states that the officers had a search warrant and claimed to be confiscating the store's surveillance videos as evidence Duran was selling drug paraphernalia.

The article's author alleged that Officer Richard Cujdik falsely claimed in his search warrant application that a confidential informant, who is not identified in the article, purchased small ziplock bags from Duran's store on the day of the raid at approximately 4:30 p.m. After reviewing the surveillance video from one of the cameras recorded from 4 to 5 p.m., the author of the article indicated that this particular camera did not record anyone purchasing ziplock bags during this time. Although Officer Richard Cujdik apparently indicated in the search warrant that his informant purchased similar ziplock bags on two other occasions, the article reveals that Duran claims he was unable to locate the video footage from those days. Based on this information, the author of the article concludes that Officer Richard Cujdik fabricated evidence to obtain the search warrant for Duran's store.

Before this article was published in the *Philadelphia Daily News* on March 30,

2009, a task force of federal and local law enforcement had already launched an investigation of the Philadelphia Narcotics Field Unit in February 2009. Although the investigation was targeted at allegations of Officer *Jeffrey* Cujdik's conduct, who is Officer Richard Cujdik's brother, the task force also investigated the entire Narcotics Field Unit team who made arrests with Officer Jeffrey Cujdik. To date, the parties agree that no charges have been filed against any member of the Philadelphia Narcotics Field Unit, including Officer Richard Cujdik, the police affiant in this case.

Appellant's sole proffer to support his after-discovered evidence claim was the aforementioned *Philadelphia Daily News* article. In his brief submitted to this Court sitting *en banc,* Appellant claimed the article "*established* that Officer [Richard] Cujdik had in another case obtained a search warrant based on the false representation that CI–142 had purchased drug paraphernalia at a store." Appellant's Substituted Brief, at 10 (emphasis added). I disagree with Appellant's contention that these mere allegations established any fact concerning Officer Richard Cujdik's conduct.

Before we reach the four-prong after-discovered evidence test, it is essential to discuss whether Appellant actually presented *evidence* that is "producible and admissible." *Chamberlain,* 612 Pa. 107, 30 A.3d at 414. Newspaper articles generally do not constitute evidence, as they contain inadmissible hearsay that cannot be offered to prove its truth. Pa.R.E. 801–802. *See also Commonwealth v. Saksek,* 361 Pa.Super. 173, 522 A.2d 70, 72 (1987) (upholding exclusion of newspaper article as inadmissible hearsay); *Presbyterian SeniorCare v. Unemployment Compensation Bd. of Review,* 900 A.2d 967, 978 (Pa. Cmwlth.2006) (finding uncorroborated dou-

ble hearsay in newspaper article was not sufficient to establish the allegation as fact).[1] In this case, the article contains a reporter's account of a witness's testimony in the Duran case, which is double hearsay. Appellant attempts to offer the article to prove the truth of its allegations: the claim that Officer Richard Cujdik fabricated evidence to obtain a search warrant for Duran's store. As such, the article would be inadmissible for this purpose.

In a submission to this *en banc* court after oral argument, Appellant concedes the sole newspaper article he presented in his post-sentence motion request was not itself evidence, but essentially claims the article provides a basis for believing he may find after-discovered evidence to present at the hearing. Response to the Commonwealth's Post–Argument Memorandum, at 1–2. However, in making this concession, Appellant shows he failed to meet the initial hurdle in presenting producible and admissible *evidence* in his petition, and asks this Court to remand for a hearing so that he can find possible evidence to support his claim. *Chamberlain,* 612 Pa. 107, 30 A.3d at 414. However, our Supreme Court has held that "an evidentiary hearing ... is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim." *Commonwealth v. Scott,* 561 Pa. 617, 628, 752 A.2d 871, 877 n. 8 (2000).

Even if this Court accepts Appellant's claim that he can prove the allegations set forth in the newspaper article, it is pure speculation to determine what evidence Appellant will be able to offer at the hearing. Even though the Majority states that

newspaper articles are generally inadmissible and concedes that Appellant does not seek to admit the newspaper article itself as evidence, the Majority desires to remand this case to allow Appellant to introduce "the content of what is described in the article" which is "independently verifiable." Majority, at 1245, 1249. However, the main "content" that Appellant seeks to prove in the newspaper articles are mere accusations by reporters and a local storeowner that Officer Richard Cujdik may have been involved in misconduct. Although we do not discount the gravity of these accusations, Appellant failed to explained what evidence he could present at an evidentiary hearing to verify these allegations.

Although not offered as a basis for Appellant's after-discovered evidence claim in the trial court, the Majority points out that the newspaper article indicated that Jose Duran recovered one video surveillance tape which allegedly shows an officer disabling one of the convenient store cameras.[2] However, even if this video does show an officer removing one of the surveillance cameras, this is not evidence of misconduct as the article also states that the officers told Duran they were confiscating surveillance videos which likely contained evidence of the sale of drug paraphernalia within Duran's store.

In addition, the Majority claims this video "directly contradict[s]" Officer Richard Cujdik's search warrant application which indicates that one of his informants purchased drug paraphernalia from Duran's store on the day of the raid at approxi-

---

1. "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *NASDAQ OMX PHLX, Inc. v. PennMont Sec.,* 2012 WL 2877607, at *11 n. 7 (Pa.Super.Ct. July 16, 2012) (citing *In re Brown,* 30 A.3d 1200, 1204 n. 2 (Pa.Super.2011)).

2. Despite the Majority's claim the online newspaper article contains a link to view the surveillance videos, this link was removed from the online article and the videos are not currently available for viewing.

mately 4:00 p.m. However, the fact that the particular video camera failed to record this transaction is not independently verifiable evidence of Officer Cujdik's misconduct. The article indicates that Duran's convenient store had numerous cameras to view and record different parts of the store. Thus, although one of Duran's cameras did not record a sale of drug paraphernalia on that particular date and time, one cannot conclude that the sale of drug paraphernalia was not recorded by another camera in the store. Further, even though Officer Richard Cujdik stated in his search warrant application that his informant had also purchased drug paraphernalia from Duran's store on two prior occasions, the article indicates Duran was seemingly unable to locate video of those dates.

For these reasons, there is no merit in remanding this case for an evidentiary hearing, which would waste valuable judicial resources. Appellant failed to identify any "evidence" which would be producible and admissible. Over three years after federal and local law enforcement began their investigation, neither Officer Richard Cujdik nor any member of the Philadelphia Narcotics Field Unit has been charged with misconduct. Appellant did not identify any witnesses that could offer admissible testimony of their personal knowledge of Officer Richard Cujdik's misconduct, identify any possible evidence that could be presented, or complete any additional discovery in the three years this request has been pending. Yet, Appellant asks this Court to remand to the trial court to launch a parallel investigation into the same matter, but offers no insight how

he will substantiate the allegations he has set forth.

The majority relies on *Rivera* in which a three-judge panel of this Court found that Rivera was entitled to a new trial based on after-discovered evidence contained in a newspaper article which detailed the arrest of the laboratory technician who testified at Rivera's trial. *Commonwealth v. Rivera*, 939 A.2d 355, 357–59 (Pa.Super.2007). As the laboratory technician was "arrested and accused of skimming drugs for personal use instead of securing the evidence for prosecution in drug cases," the *Rivera* court found that the technician's arrest called into question her testimony which was used to convict Rivera of possession of a controlled substance with intent to deliver. *Id.*

Relying on *Rivera*, the majority suggests that this Court's subsequent decision in *Commonwealth v. Estepp*, 17 A.3d 939 (Pa.Super.2011), should be overruled. In *Estepp*, the defendant asked this Court to remand his case to the lower court for a hearing on after-discovered evidence based on similar articles containing allegations of Officer *Jeffrey* Cujdik's misconduct in falsifying evidence in narcotics investigations. As the article Estepp cited "merely state[d] that Officer [Jeffrey] Cujdik was *under investigation* for misconduct," this Court found Estepp could "only speculate about possible corruption that has not been corroborated." *Id.* at 943 (emphasis added).[3] This Court correctly distinguished Estepp's case from the newspaper article in *Rivera*, which was substantiated by the laboratory technician's arrest, which at least required probable cause. *Id. See Commonwealth v. McAdoo*, 46

---

**3.** The *Estepp* court also indicated that the articles that Estepp relied on for his after-discovered evidence claim did not have dates printed on the page, but were handwritten on the article presumably by Estepp. Such information is relevant to the prong of the after-

discovered evidence test which requires Appellant to present evidence which was "discovered after the trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence." *Chamberlain*, 612 Pa. 107, 30 A.3d at 414.

A.3d 781, 784 (Pa.Super.2012) (citation omitted) (providing that an arrest must be supported by probable cause). Accordingly, this Court found that Estepp failed to present after-discovered evidence which entitled him to a new trial.

Likewise, in this case, Appellant's citation to a newspaper article which simply states that Officer Richard Cujdik is under investigation for alleged corruption in another case is not evidence, but, rather, is speculation about Officer Richard Cujdik's conduct and testimony in this case. No matter how serious the accusations may be, allegations are not evidence. The Majority's decision to remand to the trial court simply because Appellant has shown "the *potential* for uncovering exculpatory evidence" is not appropriate. Majority, at 1249.

In addition, to support its conclusion that Appellant had presented after-discovered evidence that would likely result in a different verdict, the Majority took judicial notice *sua sponte* of additional newspaper articles which state that the City of Philadelphia settled twenty-one lawsuits against Officers Jeffrey and Richard Cujdik. The Majority improperly took judicial notice of these settlement agreements as this Court may not uphold a trial court's order on the basis of off-the-record facts. *Ney v. Ney,* 917 A.2d 863, 866–67 (Pa.Super.2007) (citing *In re Frank,* 283 Pa.Super. 229, 423 A.2d 1229 (1980)). Neither party included evidence of the City of Philadelphia's settlements into the certified record. Further, Pennsylvania Rule of Evidence 201 provides that a party is "entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Pa.R.E. 201(e). The Commonwealth was not given an opportunity to respond to the Majority's judicial notice of the City of Philadelphia's settlement agreements as evidence of Officer Cujdik's corruption.

After concluding that Appellant has not presented producible and admissible evidence for our review, we cannot determine whether this potential evidence meets all four prongs of the after-discovered evidence test. As Appellant never explained how he would substantiate the allegations of Officer Cujdik's misconduct, this Court would be required to speculate on the evidence Appellant could offer to support his claim.

Even assuming arguendo that we accept the newspaper article as evidence as the sole entry in the certified record, Appellant would only be able to use this article for impeachment purposes. The article essentially details Officer Richard Cujdik's alleged misconduct in another case with an informant that is not identified. From Appellant's brief to this Court, it is apparent that Appellant attempts to require us to infer that Officer Richard Cujdik's alleged falsification of evidence in that case makes it likely that he gave untruthful testimony in this case. From this proffer, Appellant failed to prove he would not use the article solely for impeachment and has not met this prong of the after-discovered evidence test.

Accordingly, I dissent.