J-S56004-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH FLICK | |
| Appellant | No. 3053 EDA 2011 |

Appeal from the Judgment of Sentence October 11, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015607-2010

BEFORE: ALLEN, J., OTT, J., and COLVILLE, J.[*]

MEMORANDUM BY OTT, J.:                              **FILED APRIL 24, 2015**

This matter is before this panel on remand from our Supreme Court, with instruction to reconsider our prior disposition[1] in light of its recent decision in **Commonwealth v. Castro**, ___ A.3d ___, 2013 WL 2722742 (Pa. filed Jun. 16, 2014). The issue at hand is what manner of relief, if any, Flick is entitled to regarding his claim of after discovered evidence in the form of police corruption. Upon consideration of the certified record and **Castro**, we reinstate our prior order and remand this matter to allow Flick to

---

[*] Retired Senior Judge formerly assigned to the Superior Court.

[1] **Commonwealth v. Flick**, 87 A.3d 890 [3053 EDA 2011] (Pa. Super. 2013) (unpublished memorandum decision), *vacated and remanded*, 103 A.3d 1224 (Pa. 2014).

file a post sentence motion *nunc pro tunc* addressing after discovered evidence.

The factual and procedural history of this matter is particularly important to the resolution of this claim. Accordingly, we detail the following:

On September 29, 2010, at approximately 2:00 p.m., Philadelphia Police Officers Thomas Liciardello and John Speiser, both of the Narcotics Field Unit (NFU), set up surveillance of 109 West Thompson Street, Philadelphia, Pennsylvania. N.T. Trial, 8/4/2011, at 37-38.[2] The record reveals Thompson Street to be a one-way residential street with parking on both sides and with a single lane of travel. *Id*. at 86. The residence at 109 West Thompson is approximately 60 feet from the corner of Hope and Thompson, where the police were situated.[3] *Id*. at 45. Officers Liciardello and Speiser parked their unmarked police car on the opposite side of the street near the corner of Hope and Thompson. *Id*. at 85. When they arrived at the scene, both Flick and another man, later identified as Ali Farrell, were standing in front of the residence. *Id*. at 40. All the windows of the car, except the front windshield, were tinted. *Id*. at 39-40. Officer

---

[2] A typographic error in the notes of testimony indicates the first day of trial was April 4 rather than August 4.

[3] Hope and Front Streets are the two cross streets defining the relevant block of West Thompson.

Speiser sat in the front passenger seat and Officer Liciardello laid back in his seat, apparently in the driver's seat. *Id*. at 38, 106. He did so because, "if somebody on the block sees two people sitting in a car they technically think they're police." *Id*. at 106. Nonetheless, Officer Liciardello testified he got out of the car on two or three occasions to walk around the block "to make it seem like it's not so obvious." N.T. Trial, 8/5/2011, at 29, 9. Each time he left the car, he was gone for approximately ten minutes. *Id*. at 30. Officer Liciardello walked past Flick and Ferrell at least once, presumably on the opposite side of the street. *Id*. at 9-10. Officer Liciardello testified he left the actual surveillance of the target residence to Officer Speiser. *Id*. at 10.

Officer Speiser testified that approximately 20 minutes after setting up the surveillance, he witnessed an unknown white male approach Flick and give him money. N.T. Trial, 8/4/2011, at 42. Flick went into the residence, returned shortly and handed something small to the man, who then left the scene. *Id*.

Officer Speiser further testified that at approximately 2:45 p.m., he witnessed a small blue car park at the northwest corner of Front and Thompson.[4] *Id*. at 44-45. Ferrell started walking toward the car. A man got out of the car and started walking toward Ferrell. *Id*. The male handed

---

[4] It is unclear if the small blue car was travelling on Thompson Street, thereby passing the parked surveillance car, or was travelling on Front Street.

- 3 -

Ferrell money and Ferrell returned to Flick. *Id*. Ferrell handed Flick the money and Flick went back into the residence again and returned less than one minute later. *Id*. Flick handed some bright orange objects to Ferrell, who then walked back to the man. *Id*. Ferrell gave the bright orange objects to the man, who then got back into the car, which then drove away. *Id*. at 45-46. Officers Speiser and Liciardello immediately followed the small blue car, by necessity driving past Flick and Ferrell to get to Front Street. *Id*. at 46. They eventually approached the blue car, which was stuck in traffic, at Girard and Montgomery, in front of the 26th Police District. *Id*. at 47. Drugs were located in the car and a search warrant was subsequently obtained for 109 West Thompson Street. *Id*. at 112. Officer Liciardello was the affiant. *Id*. at 113.

At approximately 6:10 p.m., Officers Speiser, Liciardello and Brian Reynolds, also of the NFU, arrived at 109 West Thompson to serve the warrant. *Id*. at 56-57. As they approached, they determined Flick was no longer outside. *Id*. at 97. Rather than serve the warrant, they drove around the neighborhood and located Flick standing outside a bar he was known to frequent. *Id*. The officers arrested him at that time, telling him they were investigating a rape. *Id*. at 82. They returned to 109 West Thompson at which time they saw Ferrell sitting on the front steps. *Id*. at 83. Ferrell was arrested and the residence was searched. *Id*. The police found drugs, paraphernalia and a semi-automatic handgun. *Id*. at 62-68.

At trial, Flick's defense was based upon the alleged incredibility of the police officers. In closing argument, the Commonwealth argued the officers' testimony was truthful, stating:

> Think about motive or bias. Does not exist in this case. Did they know this defendant? Nope. Did they have anything to gain? No. Everything to lose. What did we hear? Before this defendant was even arrested Officer Liciardello said he swore out a warrant. He already put down his name and his badge and swore before a judge under oath like he did before you ladies and gentlemen, the day of this incident, this is what I just saw, please give me permission to execute this warrant to find more drugs. He swore on that day and he's sworn again. Lots of consequences for lying. You don't just face my office, prison yourself, you face the press. You know that's what happens.

N.T. Trial, 8/5/2011, at 53-54.

Flick was subsequently convicted of possession with intent to deliver, conspiracy, and a violation of the Uniform Firearms Act, and was sentenced to five to ten years' incarceration. He appealed, claiming the judgment of sentence was against both the weight and sufficiency of the evidence. On December 5, 2012, Supervising Judge Sheila Woods-Skipper filed the Pa.R.A.P. 1925(a) Opinion on behalf of the trial judge, the Honorable Willis Berry.[5]

At approximately the same time that the trial court opinion was filed, a series of news articles appeared in the local Philadelphia press indicating that certain members of the NFU, including Officers Speiser, Liciardello, and

---

[5] Judge Berry is no longer on the bench, having retired.

Reynolds, had fallen under suspicion of corruption.[6]  On December 3, 2012, Philadelphia District Attorney, R. Seth Williams, Esq., sent a letter to Philadelphia Police Commissioner Charles Ramsey indicating that the District Attorney's office would no longer accept Officers Speiser, Liciardello and Reynolds[7] as witnesses in narcotics cases.  Further, the District Attorney's office would also no longer approve any search or arrest warrant in a narcotics case in which any of the officers was an affiant or when any warrant contained averments from any of the officers.  Finally, the District Attorney's office would no longer accept for charging any narcotics case in which any of the officers would be a necessary witness.

Upon learning this information, Flick supplemented the official record with copies of the news articles and the letter from District Attorney Williams to Police Commissioner Ramsey.  Flick also filed a motion asking the matter be remanded on the basis of after discovered evidence to determine how, if at all, revelations of police misconduct affected the instant matter.  On

---

[6] The articles related how scores of cases were being withdrawn amidst allegations such as theft from drug dealers, planting evidence and providing false testimony.  Articles also noted the United States Attorney's office had declined to use the officers as witnesses for at least the two prior years and that the officers had, for years, been the subject of repeated lawsuits and internal affairs investigations.  The officers are currently on trial in federal court, facing criminal charges related to these allegations.

[7] Three other officers were included in the list of banned officers.  Those officers are not involved in this matter.  We note that all six officers are, at the time of this writing, on trial in federal court.

October 24, 2013, an unpublished memorandum decision was filed dismissing the direct appeal and remanding the matter to allow Flick to file a *nunc pro tunc* motion formally raising his claim of after discovered evidence. ***See Commonwealth v. Flick***, 3053 EDA 2011 (10/24/2013) (unpublished memorandum). It is important to emphasize that our prior decision did not grant Flick a hearing regarding after discovered evidence. Rather, we only granted Flick the opportunity to present a developed argument, via post-sentence motion, regarding the newly disclosed information regarding police corruption.

While Flick's case was pending in the Pennsylvania Supreme Court, that Court considered a similar argument in ***Commonwealth v. Castro***, ***supra***. In ***Castro***, our Supreme Court held that citation to newspaper articles alone is insufficient to warrant a remand for an evidentiary hearing regarding a claim of after discovered evidence.[8] ***Id***. at 827-28. As noted, our Supreme Court has remanded this matter for our reconsideration in light of ***Castro***. Accordingly, we must relate the factual background of that case.

In ***Castro***, the defendant filed a Pa.R.Crim.P. 720(C) after discovered evidence motion seeking a new trial. In support of his request for relief, he attached copies of several newspaper articles detailing the alleged misdeeds

---

[8] The police officer involved in ***Castro***, Officer Richard Cujdik, was also a member of the NFU, and was also accused of misconduct, including improper use of a confidential informant. Officer Cujdik was not one of the six officers named in District Attorney Williams' letter.

committed by Police Officer Richard Cujdik in the course of the performance of his duties. These included allegations of fabricating evidence regarding confidential informant (CI) #142, the same CI used to implicate Castro. An *en banc* panel of our Court granted Castro relief, vacating judgment of sentence and remanding for an evidentiary hearing on his motion. ***See Commonwealth v. Castro***, 55 A.3d 1242 (Pa. Super. 2012) (*en banc*).

Our Supreme Court granted the Commonwealth's petition for allowance of appeal and determined that the mere inclusion of newspaper articles, no matter how damning otherwise, did not suffice as evidence sufficient to support the grant of a hearing on a Rule 720(C) after discovered evidence motion. Specifically, our Supreme Court stated:

> We decline to impose a strict requirement that the proponent of a Rule 720 motion attach affidavits or other offers of proof; the rule does not contain express language requiring this, in contrast to the rules pertaining to PCRA petitions. However, we hold a motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing. The article here mentioned individuals who may have been relevant witnesses in the end, as well as a video tape and an ongoing investigation regarding Officer Cujdik. The motion says nothing about which, if any, of this potential evidence appellee would rely on to support his request for a new trial. Absent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations of Officer Cujdik's wrongdoing, we cannot conclude appellee had evidence to offer; to conclude otherwise would be speculation.

***Castro***, 93 A.3d at 827 (footnote omitted).

The **Castro** decision also discussed a prior relevant decision, **Commonwealth v. Brosnick**, 607 A.2d 725 (Pa. 1992). In **Brosnick**, the defendant provided not only newspaper articles detailing alleged problems with the accuracy of DUI breath-testing machines, he also included a citation to a report from the State Auditor General that attacked the credibility of the certificates of accuracy for the machines. The citation to the report was sufficient additional information to support the grant of a new trial. In distinguishing **Brosnick** from **Castro**, our Supreme Court stated:

> Unlike **Brosnick**, there was no such end product here, no published report, no findings made, no charges filed. While newspaper articles can alert a party to the possible existence of evidence, the party must do more than attach the article as establishing the evidence that will meet the four-pronged test.[9]

**Castro**, 93 A.3d at 827.

Therefore, there is no bright line rule for the type of proof needed to obtain a hearing pursuant to a Rule 720(C) after discovered evidence motion. However, solely citing newspaper articles, which are essentially a

---

[9] The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

**Commonwealth v. Castro**, 93 A.3d 818, 821 n.7 (Pa. 2014) (citation omitted).

Because we are not granting Flick substantive relief on his petition, we leave the application of the four-prong test to the trial court.

second-hand relation of possible evidence, does not suffice. Rather, the petitioner must provide minimally, a description of the evidence that is anticipated to be presented. In **Brosnick**, such evidence was provided by citation to a report from the Auditor General detailing the technical problems that Brosnick anticipated raising.

Instantly, Flick has provided copies of both newspaper articles, detailing several allegations of misconduct, and the letter from the Philadelphia District Attorney, indicating that in no uncertain terms Officers Liciardello, Speiser and Reynolds will not be allowed to take the stand in future drug cases, and no cases in which they supplied affirmations would go forward. We believe the District Attorney's letter is akin to the Auditor General's report that proved to be a sufficient basis for relief in **Brosnick**. The letter goes beyond merely challenging their credibility by rendering the officers incompetent to testify. In the same way the Auditor General's report exposed the problems with the certification of DUI breath-testing machinery, the District Attorney's letter exposed the inability of the subject officers to provide credible testimony.[10]

In addition to our analysis demonstrating that, based upon the quality of evidence presented, this case is more similar to **Brosnick** than **Castro**,

---

[10] In discussing **Brosnick**, **Castro** also speaks of charges being filed as being a greater level of evidence than newspaper articles. Federal charges have been filed against the officers and the trial proceeds.

we also note that the relief originally sought herein was not an evidentiary hearing. Our Court's original decision did not grant Flick a fishing license in contravention to the Supreme Court's mandate. It granted Flick the opportunity to present a motion containing a developed description of the evidence he would rely upon seeking a new trial. We believe this limited grant of relief by our Court complies with the dictates of both **Brosnick** and **Castro**, by allowing the parties to present fully developed presentations of their evidence and by having the trial court make the initial determination regarding the substance of the after discovered evidence.

Considering the grave nature of the allegations leveled against the officers, these allegations need to be addressed fully and openly because the integrity of the criminal justice system is at issue in this matter. The opportunity for Flick to present a fully developed motion will not only allow him to describe his proposed evidentiary support, but will also grant the Commonwealth the opportunity to present evidence in support of its position without presuming prejudice. Accordingly, we believe this Court's prior decision, dismissing Flick's direct appeal, without prejudice, and granting him *nunc pro tunc* relief to file a post-sentence motion with the trial court regarding his claim of after discovered evidence was proper. Said order is reinstated.

Appeal dismissed. Flick is granted leave to file a *nunc pro tunc* post sentence motion raising his claim of after discovered evidence. Request for an evidentiary hearing is denied without prejudice to request a hearing in

the *nunc pro tunc* motion. Said motion shall be filed within ten days of the filing of this decision. Case remanded with instructions. Jurisdiction relinquished.

Judge Colville did not participate in the consideration or decision of this case upon remand.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2015