J-S02013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL SHELLEY | : | |
| | : | |
| Appellant | : | No. 1183 EDA 2021 |

Appeal from the PCRA Order Entered May 28, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001363-2012

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 12, 2022**

Appellant, Daniel Shelley, appeals from the May 28, 2021 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.[1]  We affirm.

The record demonstrates that, on April 3, 2013, Appellant pleaded guilty pursuant to a negotiated plea agreement to third-degree murder and firearms

---

[1] Appellant's notice of appeal indicates that he is appealing from the May 28, 2021 order dismissing his PCRA petition, as well as the May 28, 2021 opinion and order denying his PCRA petition.  A review of the record demonstrates that the PCRA court filed an opinion and order on May 28, 2021, in which it stated, "For the foregoing reasons, the instant petition is denied."  PCRA Court Order and Opinion, 5/28/21, at 16.  This filing, however, did not contain a distinct and separate order of court dismissing Appellant's petition.  Rather, the PCRA court entered a separate order dismissing Appellant's petition on May 28, 2021.  Therefore, Appellant's appeal properly lies from the order dismissing his PCRA petition.

not to be carried without a license.[2]  N.T., 4/3/13, at 25-26.  That same day, the trial court imposed an aggregate sentence of 22½ to 45 years' incarceration.[3]  Sentencing Order, 4/3/13.  On April 15, 2013, Appellant filed a motion to withdraw his guilty plea and requested an evidentiary hearing.  Appellant's Motion to Withdraw Guilty Plea, 4/15/13.  On April 17, 2013, the trial court denied Appellant's request for a hearing and denied his motion to withdraw his guilty plea.  Trial Court Order, 4/17/13.  Appellant did not appeal his April 3, 2013 judgment of sentence.

On April 15, 2014, Appellant filed a PCRA petition asserting claims of: (1) a constitutional violation that so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; (2) ineffective assistance of trial counsel; and (3) unlawful inducement of a guilty plea.  Appellant's PCRA Petition, 4/15/14; **see also** 42 Pa.C.S.A. § 9543(a)(2)(i-iii).  In particular, Appellant asserted that trial counsel ignored his requests to file a direct appeal challenging the validity of his guilty plea and that trial counsel was ineffective for failing to file such an appeal.  Appellant's PCRA Petition, 4/15/14, at ¶¶49-51.  On September 22, 2014, the PCRA court granted the Commonwealth's motion to dismiss Appellant's PCRA

---

[2] 18 Pa.C.S.A. §§ 2502(c) and 6106, respectively.

[3] The trial court sentenced Appellant to 20 to 40 year's incarceration for third-degree murder and 2½ to 5 years' incarceration for firearms not to be carried without a license, which was set to run consecutively for the sentence imposed for third-degree murder.  Sentencing Order, 4/3/13.  Appellant was awarded credit for time served and ordered to pay mandatory court costs.  ***Id.***

petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. PCRA Court Order, 9/22/14.

On October 14, 2014, Appellant lodged a direct appeal, *nunc pro tunc,* from his April 3, 2013 judgment of sentence. Notice of Appeal, 10/14/14. On January 12, 2016, this Court affirmed Appellant's judgment of sentence on the ground Appellant waived his appellate challenges to the validity of his guilty plea because he failed to properly preserve the issues by raising objections during his plea colloquy. **Commonwealth v. Shelley**, 2016 WL 128545, at *1 (Pa. Super. Filed January 12, 2016) (unpublished memorandum). Appellant did not seek discretionary review by our Supreme Court, and his judgment of sentence became final on February 11, 2016. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); **see also** Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within 30 days after entry of an order of this Court sought to be reviewed).

On January 27, 2017, Appellant filed a timely PCRA petition asserting claims of: (1) a constitutional violation that so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; (2) ineffective assistance of trial counsel; and (3) unlawful inducement of a guilty plea. Appellant's PCRA Petition, 1/27/17; **see also** 42 Pa.C.S.A. § 9543(a)(2)(i-iii). The Commonwealth subsequently filed

a motion to dismiss Appellant's petition. Commonwealth's Motion to Dismiss, 6/20/17. On June 29, 2017, the PCRA court notified Appellant pursuant to Pa.R.Crim.P. 907 of its intent to dismiss his PCRA petition. On August 3, 2017, the PCRA court granted the Commonwealth's motion to dismiss, dismissed Appellant's PCRA petition, and permitted PCRA counsel to withdraw.

On August 7, 2017, Appellant appealed from the August 3, 2017 order dismissing his PCRA petition.[4] In an October 6, 2017 *per curiam* order, this Court dismissed Appellant's appeal for failure file a docketing statement. *Per Curiam* Order, 10/6/17; **see also** Pa.R.A.P. 3517 (requiring an appellant to file a docketing statement with this Court).

On February 12, 2018, Appellant filed *pro se* a PCRA petition asserting, *inter alia*, a claim of ineffective assistance of PCRA counsel and a claim of after-discovered evidence. Appellant's *Pro Se* PCRA Petition, 2/12/18; **see also** 42 Pa.C.S.A. § 9543(a)(2)(ii) and (vi). On February 28, 2018, counsel for Appellant, having been appointed by the PCRA court, filed an amended PCRA petition. On March 15, 2018, the PCRA court granted Appellant's request to reinstate his collateral appeal rights *nunc pro tunc*.[5] On appeal,

_____

[4] Although PCRA counsel was permitted to withdraw from representing Appellant, PCRA counsel nonetheless filed an appeal on Appellant's behalf. Notice of Appeal, 8/7/17.

[5] In granting Appellant's request to restore his collateral appeal rights *nunc pro tunc*, the PCRA court did not address the timeliness of the February 12, 2018 *pro se* PCRA petition and whether the PCRA court had jurisdiction to grant such relief. **See** PCRA Court Order, 3/15/18. Appellant's February 12,

this Court affirmed the August 3, 2017 order dismissing Appellant's PCRA petition, and our Supreme Court denied discretionary review. ***Commonwealth v. Shelley***, 2018 WL 5861636 (Pa. Super. Filed November 9, 2018) (unpublished memorandum), *appeal denied*, 207 A.3d 284 (Pa. 2019).

On May 3, 2019, Appellant filed *pro se* the instant PCRA petition. Counsel was appointed to represent Appellant, and, on November 14, 2019, counsel filed an amended PCRA petition and requested an evidentiary hearing. Counsel supplemented the amended PCRA petition with filings on October 30, 2020, and November 14, 2020. The PCRA court conducted an evidentiary hearing on January 8, 2021, March 26, 2021, and April 19, 2021. On May 28, 2021, the PCRA court dismissed Appellant's PCRA petition. This appeal followed.[6]

Appellant raises the following issues for our review:

> 1. Whether new evidence supports allowing [Appellant] to withdraw his guilty plea and allow this case [to] be scheduled for a trial because of "a violation of the

---

2018 *pro se* PCRA petition was untimely on its face because it was filed more than one year after his judgment of sentence became final on February 11, 2016. ***See*** 42 Pa.C.S.A. § 9545(b)(3); ***see also*** 42 Pa.C.S.A. § 9545(b)(1). Although there appears to be no basis in the certified record for the PCRA court's assertion of jurisdiction in granting Appellant relief, Appellant was ultimately denied collateral relief, as discussed *infra*.

[6] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On June 14, 2021, the PCRA court filed its Rule 1925(a) opinion relying on its May 28, 2021 opinion that accompanied the order dismissing Appellant's PCRA petition.

constitution of this Commonwealth or the constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place[?"]

2. Whether new evidence supports allowing [Appellant] to withdraw his guilty plea and allow this case [to] be scheduled for a trial because of "a plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused [Appellant] to plead guilty and [Appellant] is innocent[?"]

3. Whether new evidence supports allowing [Appellant] to withdraw his guilty plea and allow this case [to] be scheduled for a trial because of "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced[?"]

Appellant's Brief at X-XI (extraneous capitalization and citations omitted).

Preliminarily, we must address the timeliness of Appellant's PCRA petition since this implicates this Court's jurisdiction. *In re Payne*, 129 A.3d 546, 555 n.12 (Pa. Super. 2015) (*en banc*), *appeal denied*, 145 A.3d 167 (Pa. 2016). It is well-established that the timeliness of a PCRA petition is jurisdictional and that if a PCRA petition is untimely, courts lack jurisdiction over the claims and cannot grant relief. *Commonwealth v. Wharton*, 886 A.2d 1120, 1124 (Pa. 2005); *see also Commonwealth v. Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014) (holding, courts do not have jurisdiction over an untimely PCRA petition). To be timely filed, a PCRA petition, including second and subsequent petitions, must be filed within one year of the date a petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including

- 6 -

discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The PCRA's jurisdictional time restriction is constitutionally sound. **Commonwealth v. Cruz**, 852 A.2d 287, 292 (Pa. 2004).

As discussed *supra*, upon reinstatement of Appellant's direct appeal rights *nunc pro tunc* in September 2014, this Court subsequently affirmed Appellant's judgment of sentence on January 12, 2016. **Shelley**, 2016 WL 128545, at *1. Appellant did not seek discretionary review by our Supreme Court, and, as such, his judgment of sentence became final on February 11, 2016. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also** Pa.R.A.P. 1113(a). Therefore, Appellant's instant PCRA petition filed on May 3, 2019, more than three years after his judgment of sentence became final, is patently untimely.

If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." **Commonwealth v. Brandon**, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed

within one year of the date that the claim could have been presented.[7] 42 Pa.C.S.A. § 9545(b)(2) (effective December 24, 2018). If a petitioner fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief. *Spotz*, 171 A.3d at 676.

Here, Appellant asserts the newly-discovered facts exception to the jurisdictional time-bar based, *inter alia*, on statements he obtained from an eyewitness while both he and the eyewitness were incarcerated at the same correctional facility. *See* Appellant's Brief at 27.

It is well-established that, to invoke the newly-discovered facts exception, the petitioner must plead and prove the facts were "unknown" to him, or her, and that he, or she, could not uncover them with the exercise of "due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1274 (Pa. 2007). "Due diligence does not require perfect vigilance and punctilious care, but merely a showing the party [] put forth reasonable effort to obtain the information upon which a claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (citation and original quotation marks omitted). "[T]he newly[-]discovered fact exception does not require any merits analysis of the underlying claim, and application of the time-bar exception therefore does not

---

[7] We note that effective December 24, 2018, the time-period in which to file a petition invoking one of the three exceptions was extended from 60 days to one year. 42 Pa.C.S.A. § 9545(b)(2). This amendment applies to claims arising one year prior to the effective date of the amendment, that is to say, arising December 24, 2017, or later. Act. 2018, Oct. 24, P.L. 894, No. 146, § 3. Because Appellant filed his PCRA petition on May 3, 2019, this amendment applies.

necessitate proof of the elements of a claim of after-discovered evidence."

***Commonwealth v. Small***, 238 A.3d 1267, 1286 (Pa. 2020) (original

quotation marks omitted) (noting that the newly-discovered facts exception

to the jurisdictional time-bar is distinct from an after-discovered evidence

claim, which is a substantive basis for relief pursuant to 42 Pa.C.S.A.

§ 9543(a)(2)(iv)).

After conducting an evidentiary hearing, the PCRA court in the case *sub*

*judice* found as follows:

> [The eyewitness] began his term of incarceration at SCI Forest in 2016, and did not speak to [Appellant] until 2018. Sometime between March [2019,] and May[] 2019, [Appellant] approached [the eyewitness] and asked him to sign an affidavit for [Appellant's] pending PCRA. On July 7, 2019, [the eyewitness] signed a statement for [Appellant] stating that he spoke with [Akeel] Prout and [Edmund] Jones after the shooting, where [the two individuals] allegedly bragged about framing [Appellant] for the instant homicide. After having another individual at SCI Forest type the statement, [the eyewitness] gave it to [Appellant. The eyewitness] further claimed that he and [Appellant] never spoke about this homicide until the time he signed the statement.
>
> Within his September 13, 2019 statement and during the evidentiary hearing, [the eyewitness] admitted that he never spoke to [the two individuals] after the shooting, but instead spoke with an unidentified friend who provided [the eyewitness] with newspaper printouts indicating that [the two individuals] were cooperating with the police. [The eyewitness] further recalled that [Appellant] provided his case number [to him], and that he was unaware of [the two individuals'] arrests for gun charges until this [unidentified friend] informed him about [the arrests]. After he submitted [his July 7, 2019] false statement, [the eyewitness] spoke to an investigator working on behalf of [Appellant] and signed a second statement on September 13, 2019.

PCRA Court Order and Opinion, 5/28/21, at 4-5 (record citations omitted).

The PCRA court concluded that the eyewitness's statements, and the facts

contained therein, were unknown to Appellant and that, upon discovery and

after obtaining the signed statements, Appellant amended his PCRA petition

within one year of discovering the facts. *Id.* at 9-10.

The record demonstrates that Appellant invokes the newly-discovered

facts exception pursuant to Section 9545(b)(1)(ii) based upon two eyewitness

statements, which were provided to Appellant on July 7, 2019, and September

13, 2019, and raises an after-discovered claim based on four evidentiary

sources, as discussed more fully *infra*. Upon review, we concur with the PCRA

court, and the record supports, that the eyewitness's statements provided to

Appellant on July 7, 2019, and September 13, 2019, satisfied the

newly-discovered facts exception.[8] The newly-discovered facts in the form of

_____

[8] The Commonwealth concedes that Appellant satisfied the newly-discovered facts exception to the jurisdictional time-bar. Commonwealth's Brief at 21-22 (stating, "[a]lthough the Commonwealth does not believe that [Appellant] is entitled to relief, it agrees that his claim is cognizable under the newly[-]discovered facts exception to the PCRA's timeliness provisions").

We note that this case raises a legal question as to whether an after-discovered evidence claim is restricted to the "fact" which establishes the newly-discovered facts exception to the jurisdictional time-bar. In the case *sub judice*, Appellant invoked jurisdiction by pleading and providing the newly-discovered facts exception based upon the July 7, 2019, and September 13, 2019 eyewitness statements. Appellant raises an after-discovered evidence claim, however, based upon four distinct facts, as discussed more fully *infra*, of which only one of the "facts" is the eyewitness statements. **See** Appellant's Brief at 24-25 (setting forth that Appellant's after-discovered

the eyewitness's signed statements, and the information contained therein, were unknown to Appellant, and could not have been obtained earlier through due diligence and until the eyewitness agreed to provide them on July 7, 2019, and September 13, 2019. Upon discovery of these newly-discovered facts, Appellant filed an amended PCRA petition on November 14, 2019, well within the one-year time period, thereby invoking the newly-discovered facts

_____

evidence claims are based upon "facts" of police corruption (2 claims), the eyewitness statements, and an expert's report).

Our Supreme Court in **Commonwealth v. Cox**, **supra**, noted that a comparison of the newly-discovered facts exception and the after-discovered evidence ground for collateral relief "reveals a superficial resemblance, as both involve consideration of **whether the facts or evidence upon which the claim is based** were previously unknown to the petitioner and whether that information could have been discovered earlier, through the exercise of due diligence." **Cox**, 146 A.3d at 228 (emphasis added) (stating that, the newly-discovered facts exception test appears to be encompassed within the first factor of the after-discovered evidence test). Moreover, a plain-reading of Section 9545(b)(1)(ii) suggests a limiting-approach whereby only those facts which are relied upon to establish the newly-discovered facts exception to the jurisdictional time-bar may then be proffered in support of after-discovered evidence claims. 42 Pa.C.S.A. § 9545(b)(1)(ii) (stating, the facts **upon which the claim is predicated** were unknown to the petitioner and could not have been ascertained by the exercise of due diligence (emphasis added)); **see also Commonwealth v. Brown**, 141 A.3d 491, 507 n.14 (Pa. Super. 2016) (suggesting that, a PCRA court has jurisdiction over only after-discovered evidence claims in an untimely PCRA petition that are predicated upon facts which satisfied the newly-discovered facts exception to the jurisdictional time-bar).

While we acknowledge that it appears this legal question remains unresolved, we need not address it herein because the issue is not dispositive in the case *sub judice* for the reasons set forth *infra*.

exception to the jurisdictional time-bar. Consequently, we review the merits of Appellant's claims and the issues raised on appeal.

In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of a PCRA court's dismissal of a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Hickman**, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Collectively, Appellant's issues raise a claim of after-discovered evidence asserting that the exculpatory proof would justify a new trial and, as such, entitle him to withdraw his guilty plea. **See Commonwealth v. Hester**, 171 A.3d 268, 273 n.6 (Pa. Super. 2017) (stating that, although a defendant's "sentence resulted from a plea of guilty, rather than as a result of a trial, any after-discovered evidence which would justify a new trial would also entitle a defendant to withdraw his guilty plea" (citation, brackets, and original

quotation marks omitted)), *appeal denied*, 181 A.3d 1078 (Pa. 2018). Specifically, Appellant asserts that after-discovered evidence demonstrates: (1) his constitutional rights were violated to the extent that the violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; (2) his guilty plea was unlawfully induced; and (3) he is innocent. Appellant's Brief at 25-62.

To obtain a new trial based on after-discovered evidence, the petitioner must satisfy a four-part test requiring

> the petitioner to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018), *citing* **Commonwealth v. Pagan**, 950 A.2d 270 (Pa. 2008), *cert. denied*, 555 U.S. 1198 (2009); **see also Commonwealth v. Peoples**, 319 A.2d 679, 681 (Pa. 1974) (stating that, the four-part after-discovered evidence test applies whether the petitioner seeks the withdrawal of a guilty plea or a new trial). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa. Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010). In addition, the after-discovered evidence must be producible and admissible. **Small**, 189 A.3d at 972.

- 13 -

The "salutary goal of the after-discovered evidence rule [is] to limit continued litigation without being so rigid as to shut out [after-]discovered evidence **from a credible source** which may lead to a true and proper judgment." *Id.* at 975 (citation omitted, emphasis added). When the after-discovered evidence is exculpatory eyewitness testimony, a request for a new trial based on the exculpatory eyewitness testimony hinges on the credibility of the testimony. *Id.* "[T]he inquiry into whether the evidence would likely result in a different verdict [is] the lodestar of the after-discovered evidence analysis." *Id.* at 976 n.12 (stating that, the second and third prongs of the test are subsumed by the fourth prong regarding the likelihood of a different outcome), *citing* **Commonwealth v. Perrin**, 59 A.3d 663, 669 (Pa. Super. 2013) (Wecht, J., concurring), *vacated*, 103 A.3d 1224 (Pa. 2014). In short, only credible testimony satisfies the fourth prong of the after-discovered evidence test.

Appellant asserts the after-discovered evidence that entitled him to withdraw his guilty plea comes from the following four sources:

> First, there was new evidence that [Philip Nordo, a former homicide detective who was assigned to investigate Appellant's underlying case,] is being prosecuted for corruption and allegations that he is a sexual predator. Second, there was new evidence that [Nathaniel Williams, another former homicide detective assigned to investigate Appellant's underlying case] was charged with corruption. Third, there is a new eyewitness[ who,] at the age of 14 [years old,] was present at the scene of the shooting[, from which Appellant's underlying charges emerged, and who provided Appellant with statements on July 7, 2019, and September 13, 2019]. Fourth, there is new evidence in the form of an expert report [stating] that innocent people plead guilty,

especially those under the age of 20 [years old]. Additionally, [the expert authoring the report] found that [Appellant] had a learning disability (dyslexia) and a 4th grade reading level. Also, [the expert] rendered an opinion that it is quite common for young men to not disclose[,] or delay disclosure of[,] their sexual assault.

Appellant's Brief at 24-25.

Regarding the allegations of after-discovered evidence in the form of police corruption, Appellant contends that Nordo's indictment "on a litany of sexual assault, rape, stalking, theft, and official oppression charges" demonstrates that Nordo was not only a sexual predator but that he "was completely corrupt." *Id.* at 29-30. Appellant also contends that the criminal charges filed against Williams, which according to Appellant, include tampering with public records, lying to authorities, tampering with evidence, and obstruction of the law, demonstrates that Williams was also corrupt. *Id.* at 33. Appellant claims that, in the Commonwealth's case against him, there was no physical evidence, *i.e.*, a gun, and no scientific evidence, *i.e.*, test results showing gunpowder residue on Appellant's person or clothing. *Id.* at 46. Appellant asserts that the Commonwealth's only evidence implicating Appellant in the shooting death of the victim was the police statements obtained from Prout and Jones in which both individuals stated they observed Appellant firing shots while riding a bicycle down the street at the time of the incident. *Id.* at 46. Appellant argues that the after-discovered evidence, namely the indictment and criminal charges against the former police detectives, demonstrates that Nordo and Williams falsified the police

statements provided by Prout and Jones implicating Appellant as the shooter. *Id.* at 38-44. Appellant further asserts that this after-discovered evidence of police corruption bolsters the credibility of Prout's and Jones' testimony at Appellant's preliminary hearing in which both individuals recanted their police statements implicating Appellant as the shooter. *Id.* at 34-44. Appellant asserts,

> If [] Nordo and Williams had not falsified the "police statements" of Prout and Jones, [Appellant] would not have [pleaded] guilty. Further, this case would not have been held over at [Appellant's] [p]reliminary [h]earing.

*Id.* at 44.

Upon review, we discern no error of law or abuse of discretion in the PCRA court's denial of collateral relief based upon Appellant's assertion that the criminal indictment and criminal charges filed against the former police detectives constituted after-discovered evidence. Information regarding a criminal indictment or criminal charges that has been filed against a person does not constitute evidence for purposes of an after-discovered evidence claim because criminal indictments or criminal charges are based upon allegations, not proven facts. *See Commonwealth v. Delbridge*, 859 A.2d 1254, 1258 (Pa. 2004) (stating, "[a]llegations are not evidence"); *see also Commonwealth v. Griffin*, 137 A.3d 605, 609-610 (Pa. Super. 2016) (explaining that, allegations or accusations contained in a criminal indictment, or criminal charges, are not evidence), *appeal denied*, 157 A.3d 476 (Pa. 2016). Therefore, Appellant's assertion that he is entitled to collateral relief

- 16 -

based upon information regarding a criminal indictment filed against Nordo and criminal charges filed against Williams is without merit because neither the criminal indictment nor the criminal charges constitutes evidence for purposes of an after-discovered evidence claim. **See Delbridge**, supra; **see also Griffin**, 137 A.3d at 609-610.

Moreover, Appellant offered no evidence that the charges against the former police detectives stemmed from alleged misconduct in Appellant's case. Appellant makes only bald assertions that because Nordo was indicated and criminal charges were filed against Williams, that the police statements obtained from Prout and Jones were falsified. Even if the allegations contained in the criminal indictment and criminal charges were evidence, in so arguing, Appellant offers this information solely to impeach the credibility of the evidence that may be offered against him if a new trial were granted, namely, to impeach the credibility of Prout's and Jones' police statements identifying Appellant as the shooter. **See Commonwealth v. Johnson**, 179 A.3d 1105, 1123 (Pa. Super. 2018) (holding that, the criminal conviction of a police detective, who was involved in questioning a witness that identified the petitioner as the perpetrator, did not constitute after-discovered evidence because evidence of the conviction was being used for impeachment purposes and there was no evidence the police detective committed misconduct in the petitioner's case); *appeal denied*, 197 A.3d 1174 (Pa. 2018); **see also Commonwealth v. Foreman**, 55 A.3d 532, 537 (Pa. Super. 2012) (holding that, "new evidence" of the filing of criminal charges against a police detective

in an unrelated matter does not satisfy the after-discovered evidence test because the "new evidence" would be used solely for impeachment purposes and would not likely result in a different verdict); **Griffin**, 137 A.3d at 610 (stating that, even if the allegations contained in an indictment or criminal complaint were "evidence," a petitioner would still not satisfy the after-discovered evidence test because the alleged evidence would be used solely for impeachment purposes). Therefore, Appellant's after-discovered evidence claim based upon the criminal indictment and criminal charges against the two former police detectives is without merit.[9]

Next, Appellant asserts that the eyewitness's two statements identifying the shooter as someone other than Appellant satisfies the after-discovered evidence test. Appellant's Brief at 52-56. Appellant contends that the PCRA court, in finding that the eyewitness was not credible, erred in denying his request for collateral relief. **Id.**

To reiterate, the after-discovered evidence must be producible and admissible. **Small**, 189 A.3d at 972. Moreover, when the after-discovered evidence is exculpatory eyewitness testimony, a request for a new trial (or a request to withdraw a guilty plea) based on the exculpatory eyewitness testimony hinges on the credibility of the testimony. **Id.** at 975 (stating that,

---

[9] Moreover, Appellant's claims that he was sexually assaulted by Nordo, that Nordo possessed nude photos of Appellant, and that Nordo threatened Appellant fail to satisfy the after-discovered evidence test because these "facts" would have been known to Appellant before he entered his guilty plea. These alleged facts cannot now be "after-discovered."

the "salutary goal of the after-discovered evidence rule [is] to limit continued litigation without being so rigid as to shut out [after-]discovered evidence **from a credible source** which may lead to a true and proper judgment." (citation omitted, emphasis added)).

In denying Appellant's request for collateral relief based upon the exculpatory eyewitness testimony and statements, the PCRA court stated,

> [Appellant] alleges that [the eyewitness's signed statements] and testimony at the evidentiary hearing [were] sufficient to establish that [former detective] Nordo conspired with witnesses [] Prout and [] Jones to falsely implicate [Appellant] as the shooter in the instant case. In his July 7, 2019 statement, [the eyewitness] recall[ed] standing on the corner of the 5800 block of Malvern Avenue at the time of the shooting and [stated that he] ducked [below a wall for safety purposes] when shots rang out. When he looked up to see who had been shooting, he recall[ed] Prout run[ning] away from the scene, with a gun in hand. [The eyewitness stated] that[,] the next day[,] both Prout and Jones were arrested for firearms possession[. After Jones was released, he bragged to [the eyewitness] that he [falsely implicated] both [Appellant and Appellant's brother in the shooting death of the victim], and that [former detective] Nordo paid both him and Prout to fabricate charges against [Appellant] and his brother. [The eyewitness] further recalled Jones bragging that Nordo would ensure that he only received probation on the [firearms] charges [that had been filed against him]. Otherwise, [the eyewitness] recalled Nordo walking around the neighborhood at an unspecified date and time and approaching him, offering to pay [the eyewitness] if he assisted with homicide cases.
>
> When PCRA counsel interviewed [the eyewitness] on September 13, 2019, [the eyewitness] reiterated that he was at the scene of the shooting and saw Prout fleeing from the area, armed with a gun. [The eyewitness] also recalled encountering Jones in the neighborhood a few days after the shooting and Jones' arrest for firearm possession. In the September 13, 2019 statement, however, [the eyewitness] acknowledge[d] that his July 7, 2019 statement was false, as he did not speak to Jones after the instant shooting. Instead, an unnamed friend of [the eyewitness]

allegedly approached Jones and Prout after the shooting, [and was told by Prout and Jones] that Nordo paid them to implicate [Appellant and his brother]. After [the] conversation with his unnamed friend, [the eyewitness] did not see Jones for several years, and did not interact with Prout, who was killed in an unrelated shooting a few months after the instant homicide.

At the evidentiary hearing, [the eyewitness] reiterated that he never spoke to Jones, and instead [] only [became] aware that Prout and Jones were cooperating with police after speaking to an unidentified friend, who provided him newspaper articles demonstrating Prout's and Jones' cooperation [with the police]. He also recalled how, prior to giving his July 7, 2019 [statement] containing this falsehood, [Appellant] approached him at SCI Forest. According to [the eyewitness], that was the first time he spoke to anyone involved in the investigation or the shooting in the eight years since the decedent's murder.

[The eyewitness's] statements concerning his or his [unnamed] friend's discussion with Jones and Prout is insufficient to support [Appellant's] after-discovered evidence claim, as it is based entirely on inadmissible hearsay not falling into any exception. *See* Pa.R.E. 802; [*see also* Pa.R.E.] 803. [Appellant] and [the eyewitness] fail to identify the individual who allegedly had this conversation with Jones and Prout, and [Appellant] fails to present any basis that would permit this evidence to be admitted at trial. Accordingly, the claims fails.

Moreover, [the PCRA] court found [the eyewitness's] testimony from the evidentiary hearing to be wholly incredible. [The eyewitness] admitted that his July 7, 2019 [statement] was fabricated and contained factual averments that [the eyewitness] had received from another individual. However, [the eyewitness] was unable to identify the individual who provided him this information. At the evidentiary hearing, [the eyewitness] admitted that he had no independent recollection of the date of the homicide, and that [Appellant] had provided him both the date and the case number appearing in the July 7, 2019 [statement]. Despite his claim that [Appellant] approached him sometime between March [2019,] and May 2019, for the specific purpose of securing his [statement, the eyewitness] claimed that he and [Appellant] did not talk about the case prior to then, and otherwise did not interact with each other in prison.

Even if [the PCRA] court ignored the discrepancies within [the eyewitness's] statements and his recollection of the investigation leading to his testimony, [the eyewitness's] account of the shooting would still be insufficient to warrant a new trial on the basis of after-discovered evidence. [The eyewitness's] testimony does not demonstrate that someone other than [Appellant] was responsible for the instant murder. At the March 26, 2021 evidentiary hearing, [the eyewitness] testified about how on the night of the shooting, he was standing on his friend's porch when he heard gunshots. Immediately after hearing the shots, [the eyewitness] recalled ducking down behind a brick wall. Only after the gunfire stopped did [the eyewitness] peek from behind the wall, where he saw Prout and Jones running away from the scene in different directions, with Prout apparently carrying a firearm.

These facts, if believed, demonstrate that while [the eyewitness] may have been present at the location of the shooting, he did not see the shooting itself, only its aftermath. It is clear from the facts of this case that the decedent was an innocent by[-]stander and not the intended target of the shooting. While [the eyewitness] may have seen Prout carrying a weapon, his testimony is insufficient to demonstrate that Prout was the only person with a firearm, that Prout had even fired his weapon, or that [Appellant] had not inadvertently murdered the decedent in an attempt to shoot Prout. [The fact that the eyewitness] could not recall seeing [Appellant] from his vantage point behind a wall, where he could not see the shooting itself, does not eliminate [Appellant] from having been the perpetrator of the instant shooting. [The eyewitness] did not and could not identify an alternate shooter, and could only speak to his recollection of events immediately after the shooting.

[The PCRA] court also cannot discount the fact that [Appellant] turned himself in to investigators on October 11, 2011, and he ultimately entered into a negotiated guilty plea agreement with the Commonwealth on April 3, 2013. [Appellant] entered into a knowing, intelligent, and voluntary plea. [The fact that] one eyewitness did not recall seeing [Appellant] on the night of the shooting, and only provided this information eight years later after [Appellant] approached him while serving time in a state correctional institution, does not convince [the PCRA] court that anyone other than the [Appellant] was responsible for this shooting.

PCRA Court Order and Opinion, 5/28/21, at 10-14 (record citations and extraneous capitalization omitted).

It is well-settled that the determination of a witness's credibility to support a claim based upon after-discovered evidence falls squarely within the province of the PCRA court, and this Court will not disturb that credibility determination when it is supported by the record. *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) (stating, "[i]ndeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone"). Here, the record supports the PCRA court's determination that the eyewitness's testimony, and his written statements, were not credible. In his July 7, 2019 written statement, the eyewitness wrote,

> When [] Jones came home, **I asked him** about his gun case and he started bragging about [implicating Appellant and his brother in the shooting death of the victim] because he didn't like them, and that [Nordo] paid him and [] Prout to find someone they didn't like to put the homicide on because his case was at a standstill.

Amended PCRA Petition, 11/14/19, at Exhibit 32 (emphasis added). In his September 13, 2019 statement, the eyewitness wrote,

> The truth is **I did not have a conversation with [Jones].** The truth is a friend of mine found out that [Jones and Prout] were cooperating with the police about the homicide. My friend told me that he approached [Prout and Jones] and asked them about their cooperation with the police. My friend said that [Jones] told him that [] Nordo paid them to state that they saw [Appellant and his brother] commit the homicide. . . . I did not see [Appellant] on the night of the shooting. I did not see anyone on a bike. I did

- 22 -

see [Prout] running away from the area with a gun in his hand.  I could not see who the other male was that ran off[.]

Amended PCRA Petition, 11/14/19, at Exhibit 12 (emphasis added).

At the evidentiary hearing, the eyewitness stated that he did not prepare either of the statements but, rather, he only signed them after they were prepared.  N.T., 3/26/21, at 36, 49-51.  The eyewitness admitted that the information contained in the July 7, 2019 statement and, in particular, the fact that Jones admitted directly to the eyewitness that he falsely implicated Appellant as the shooter, was not the truth.  *Id.* at 35.  Rather, the eyewitness testified that he learned from a friend, who he refused to identify, that Prout and Jones falsely identified Appellant as the shooter.  *Id.* at 35-36.  The eyewitness testified that his knowledge about Appellant being falsely identified as the shooter was based upon second-hand information he learned from a "friend" that he refused to identify but who, according to the eyewitness, learned Prout and Jones were cooperating with police from newspaper articles. Upon review, we discern no abuse of discretion or error of law in, and the record supports, the PCRA court's determination that the eyewitness, and his statements, were not credible and that Appellant failed to satisfy the fourth prong of the after-discovered evidence test.    As such, Appellant's

after-discovered evidence claim based upon the eyewitness, and his statements, is without merit.[10]

Finally, Appellant contends that an expert report, offered by Appellant at the conclusion of the evidentiary hearing *in lieu* of the expert's testimony, constituted after-discovered evidence that Appellant's guilty plea was unlawfully induced and coerced.[11]  Appellant's Brief at 56-62.

_____

[10] We concur that the eyewitness's testimony would be inadmissible as evidence if a new trial were granted because it was based entirely upon hearsay, *i.e.*, the "friend's" statements to the eyewitness, and does not fall within one of the exceptions against hearsay enumerated in Pennsylvania Rule of Evidence 803.  **See** PCRA Court Order and Opinion, 5/28/21, at 12; **see also Commonwealth v. Laich**, 777 A.2d 1057, 1060 (Pa. 2001) (defining "hearsay" as "an out-of-court statement offered to prove the truth of the matter asserted in the statement"); Pa.R.E. 803 (setting forth the limited exceptions to the rule against hearsay).  Furthermore, the eyewitness's statements would constitute double hearsay, out-of-court statements containing other out-of-court statements, and would, similarly, be inadmissible as evidence.  **See Laich**, 777 A.2d at 1060 (stating that, "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established.  This requirement is satisfied when each statement comes within an exception to the hearsay rule. (citations omitted)).

Moreover, the eyewitness's testimony regarding the incident and the identity of the shooter does not constitute after-discovered evidence necessitating a new trial.  The eyewitness stated that he did not witness the shooting or who fired the fatal shots killing the victim but, rather, observed only the aftermath of the shooting.  After hearing shots fired, the eyewitness protected himself behind a short wall and only stood up to observe people fleeing the scene after the shooting ended.  N.T., 3/26/21, at 29-33, 43.

[11] In her report, the expert summarized her opinion as follows:

> [Appellant's] guilty plea bears many of the hallmarks of a false guilty plea and many of the factors common to false pleas.

A report expressing the opinion of an expert is simply that – an opinion

or interpretation of available evidence by a person who possesses specialized

scientific, technical, or other knowledge beyond that of a lay-person that may,

_____

[Appellant] was a young, inexperienced, undereducated person with a 4th grade reading level pressured to plead guilty by his attorney after spending close to 18 months in jail. Police set their sights on [Appellant] and his brother within three hours of the crime. ([Appellant's] brother had an airtight *alibi* and thus was never arrested.) Although there was seemingly little evidence against him, save two eyewitnesses who had since recanted, and [Appellant] claimed innocence, [Appellant's] allegedly ineffective counsel pressured him to accept the pleas or likely be convicted at trial and receive [a sentence of] life in prison. With the exception of the plea itself, to my knowledge, [Appellant] has maintained his innocence over these past nine years. Further, there are credible allegations that [Appellant] was sexually assaulted by the [former police] detective who arrested and questioned him, and that this same detective (Nordo) induced the two eyewitnesses to point the finger at [Appellant]. Nordo is a disgraced police officer whose conduct led to the wrongful conviction of four men known to date. Nordo's conduct in these four cases is quite similar to the allegations made in [Appellant's] case.

In my opinion, [Appellant's] decision to plead guilty is consistent with the factors present in his case that are common to many of the hundreds of false guilty plea cases of other defendants who were later exonerated, and to those phenomena studied by experts in the field of psychology and related social sciences. In part, an invalid guilty plea is one that is "unlawfully induced where the circumstances make it likely that the inducement caused the [defendant] to plead guilty and the [defendant] is innocent." In my opinion, the circumstances known to me in this case were sufficient to induce an innocent person to enter a guilty plea for a crime [he] did not commit.

Appellant's Post-PCRA Hearing Brief, 5/19/21, at Exhibit P20 (Page 13 of expert report).

- 25 -

or may not, embrace the issue, ultimately, to be decided by the trier-of-fact. *See Commonwealth v. Huggins*, 68 A.3d 962, 967 (Pa. Super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013). Within the context of a request for a new trial based upon after-discovered evidence, expert opinions, while they may be "'after-discovered' in the sense that no one inquired as to these opinions at the time of trial[,]" do not give rise to such relief when the expert opinion is a subsequent interpretation of already existing evidence that was known at the time of trial. *Commonwealth v. Lambert*, 765 A.2d 306, 342 (Pa. Super. 2000) (stating that an expert opinion does not constitute after-discovered evidence when based upon essential facts that existed at the time of trial); *see also Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 786-787 (Pa. 2000) (stating that, an expert opinion uncovered after trial does not constitute after-discovered evidence when based upon facts that even if not known at the time of trial were ascertainable by the exercise of due diligence).

Here, the basic premise of the expert's opinion is that the facts and circumstances pertaining to Appellant and his case tend to demonstrate that Appellant's guilty plea was not entered into knowingly, intelligently, or voluntarily. *Id.* (stating that, Appellant's "guilty plea bears many of the hallmarks of a false guilty plea"). A review of the expert's report demonstrates that her opinion was based primarily upon the following facts: (1) that the two witnesses who identified Appellant as the shooter in police statements later recanted their statements; (2) that Appellant was incarcerated for

approximately 18 months prior to entering his negotiated plea agreement; (3) that Appellant was 19 years old at the time he entered his guilty plea but suffered from learning disabilities and read at a 4th grade level; and (4) that Appellant had been sexually assaulted by the police detective investigating his case. **Id.** at 9-13; **see also** Appellant's Brief at 57-59. The facts upon which the expert opinion was based were, or could have been, known at the time Appellant pleaded guilty. Therefore, the expert opinion does not constitute after-discovered evidence. **See Lambert**, 765 A.2d at 342; **see also Commonwealth v. Gamboa-Taylor**, 753 A.2d 780, 786-787. Although the expert report discusses Nordo's indictment as a reason for Appellant's delay in disclosing his sexual assault by Nordo, the underlying fact – that Appellant was sexually assaulted by Nordo – was known at the time Appellant decided to plead guilty. Moreover, the indictment is not evidence that Appellant was sexually assaulted, as discussed *supra*, and does not constitute a "fact" which transforms the expert report into after-discovered evidence. Appellant's after-discovered evidence claim based upon the expert report is without merit.[12]

Order affirmed.

---

[12] Even if the expert report were deemed to be after-discovered evidence, such evidence would not be admissible at trial. Our Supreme Court has expressly held that expert testimony regarding false confessions is not admissible as it "constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility." **Commonwealth v. Alicia**, 92 A.3d 753, 764 (Pa. 2014).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022