**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Dontez PERRIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 2012.

Filed Jan. 3, 2013.

Raymond D. Roberts, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, WECHT, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Dontez Perrin (Appellant) appeals from his November 16, 2010 judgment of sentence of an aggregate term of five to ten years' imprisonment following his convictions for aggravated assault, robbery, criminal conspiracy, and possession of an instrument of crime.[1] Appellant asks this Court to remand the case for a hearing based upon after-discovered evidence. Upon careful consideration of the evidence and the applicable case law, we vacate Appellant's judgment of sentence, grant Appellant's request, and remand the case for further proceedings consistent with this opinion.

At approximately 7:00 P.M. on November 14, 2007, Rodney Thompson delivered a pizza to apartment 1–A of a building in the Bartram Gardens housing development in Philadelphia. When the door to the apartment opened, Thompson was greeted by two armed men whose faces were mostly covered. Thompson recognized both men, later identified as Lynwood Perry and Amir Jackson, from seeing them in or around the pizza shop. A third man, whom Thompson had not seen before, came up behind Thompson and pushed him through the door, placing what felt like a gun against the back of Thompson's head. Perry and Jackson took the cash from Thompson's pockets; Jackson hit Thompson in the head with his gun; and then the third man helped Thompson to his feet and instructed him to leave.

Thompson reported the incident to the police and went to the hospital, where he received seven stitches in his head. The following day, Thompson gave a statement to the police and viewed photographs, from which he picked out Perry, Jackson, and Appellant as the perpetrators of the robbery. Appellant, who is 6'2" tall and weighs 260 pounds, was arrested the next day sporting a full beard.

Thompson attended a line-up on March 11, 2008. Prior to viewing individuals to attempt to pick out the perpetrators of the robbery, Thompson, who is 6' tall, described the third individual as being between 5'8" and 5'10" tall, weighing between 140 and 155 pounds, and having no facial hair. Thompson selected an individual other than Appellant from the lineup.

At trial, Thompson and Perry testified that Appellant was the third man involved in the robbery. Thompson was unclear about how much of the face of the man behind him he was able to see during the robbery and whether that individual had any facial hair, but maintained that Appellant was that man.

Perry acknowledged that he was testifying for the Commonwealth pursuant to a deal with the federal government, by which he could receive a significantly lighter sentence for federal charges stemming from his participation in the instant and other robberies in exchange for his cooperation with the prosecution. Perry testified that he first met Jackson and Appellant one week before the robbery. Jackson called Perry on the day of the robbery and asked Perry if he wished to participate. Perry went to Bartram Village, they discussed the plan, Jackson called to order the pizza, and Jackson and Perry went to wait in vacant Apartment 1–A while Appellant went upstairs. Perry's remaining ac-

---

* Retired Senior Judge assigned to the Superior Court.

**1.** 18 Pa.C.S. §§ 2702(a), 3701(a)(1), 903(a)(1), and 907(a), respectively. In addition, Appel-

lant was found guilty of a number of other crimes for which no further penalty was imposed. .

count of the robbery was substantially similar to Thompson's.[2]

Appellant was found guilty of the aforementioned crimes on September 13, 2010, and on November 16, 2010, was sentenced as indicated above. Counsel was appointed to represent Appellant on appeal, but notice of the appointment was not sent to counsel. Appellant's direct appeal rights were subsequently reinstated, and Appellant filed a timely notice of appeal on April 29, 2011.

On June 6, 2011, the District Attorney's Office forwarded to Appellant's counsel a communication from the FBI. The document contains Agent Joseph Majarowitz's summary of a May 9, 2011 interview with Curtis Brown, who had been incarcerated with Perry. Brown stated that Perry spoke of testifying at trial in a state court case against Appellant. Perry indicated that he testified that Appellant was involved in the robbery because "someone had to 'go down' for it," but that Appellant was not actually involved in the crime. FBI Form FD–302, 5/18/2011.

Based upon this document, Appellant filed with this Court a petition to remand the case for a new trial or to pursue an after-discovered evidence petition with the trial court. By order of February 8, 2012, Appellant's petition was denied without prejudice to raise the after-discovered evidence issue in his brief. Appellant has done so, presenting the following question for our consideration: "WHETHER APPELLANT IS ENTITLED TO AN EVIDENTIARY HEARING BASED ON AFTER DISCOVERED/NEWLY DISCOVERED EVIDENCE OF HIS INNOCENCE." Appellant's Brief at 10.

■ "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). "[A]fter-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge...." Pa.R.Crim.P. 720, Comment. Having determined that Appellant has followed the proper procedure, we turn to the merits of his request for relief.

> To obtain relief based on after-discovered evidence, appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 109 (2009) (quoting *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008)).

■ The Commonwealth does not contend that Appellant failed to exercise reasonable diligence in discovering Brown's evidence prior to the conclusion of trial. With Brown informing the FBI of Perry's statements about Appellant's innocence months after Appellant was sentenced, we are satisfied that Appellant has met the first prong of the after-discovered evidence test. Further, as no evidence was offered at trial to demonstrate that Appellant did not participate in the robbery, the second prong is satisfied.

---

**2.** Perry's account did differ in some respects, such as regarding whether the robbery took place inside Apartment 1–A or outside the door thereto, and whether Jackson threatened to kill Thompson.

Addressing the remaining two prongs of the test, the Commonwealth argues that Brown's statement would solely be used for impeachment purposes, and that "it is unlikely that a vague, secondhand statement from an inmate whose motives and connections to [Appellant] and Perry are unknown would tip the weight of the evidence in his favor and cause the finder of fact to acquit him." Commonwealth's Brief at 11. We agree that it is not clear from the scant evidence before us that Appellant is entitled to a new trial. However, we need not decide these issues in the first instance.

We find instructive this Court's decisions in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa.Super.2007), and *Commonwealth v. Castro*, 55 A.3d 1242 (Pa.Super.2012) (*en banc*).

In *Rivera*, after the trial, the Commonwealth's laboratory technician, who testified as to the weight and type of drugs that the appellant was accused of possessing, was "exposed as a corrupt and criminal individual who had abused her position of trust with the Philadelphia Police Department and had been charged with stealing drugs from the lab." *Id.* at 357. Noting that it was "likely that a new trial is warranted in this case," *id.* at 359, we nonetheless followed the proper procedure and remanded the case for an evidentiary hearing to allow Rivera to make his case to the trial court that the after-discovered evidence met the four-prong test discussed above.

Similarly, in *Castro*, the *Philadelphia Daily News* published an article, after Castro's trial, alleging that the police officer who had testified against Castro had engaged in corruption and falsification of evidence when conducting a drug raid unrelated to the charges against Castro. *Castro*, 55 A.3d at 1244–45. Based upon this article as after-discovered evidence,

Castro moved for a new trial. The trial court denied the motion, determining that the new evidence had no purpose other than to impeach the credibility of the officer. *Id.* Relying on *Rivera*, this Court, sitting *en banc*, vacated Castro's judgment of sentence and remanded the case for a hearing on the after-discovered evidence claim, stating as follows.

The issue presently before us speaks to fundamental fairness. Had the news article been published four days before, rather than four days after Castro's trial, he would have almost certainly been granted a continuance to test the allegations. We do not yet know whether Castro will be able to present a sufficient quantum of evidence to warrant vacating his conviction, but the potential for uncovering exculpatory evidence makes it more than probable that a trier of fact would come to a different conclusion. To deny Castro the opportunity to assert a proper defense at this time would exalt form over substance, which this Court declines to do.

*Id.* at 1249.

In the instant case, Appellant's after-discovered evidence does more than call a key witness's testimony into question based upon information that that witness was accused of bad acts related to some other criminal cases. Appellant has evidence from the FBI that Perry, the key witness at trial given Thompson's inconsistent identification of Appellant, admitted that he perjured himself and that Appellant had nothing to do with the crime. We do not know at this point the extent of the statements against his interest that Perry made to Brown, or how much the evidence will point towards impeachment of Perry versus exculpation of Appellant. Because this evidence is even more pointed toward Appellant's innocence than the evidence at issue in *Rivera* and *Castro*, we find it

appropriate to remand the case to allow Appellant to flesh-out his claim for a new trial before the trial court.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge WECHT files a concurring opinion.

Judge SHOGAN files a dissenting opinion.

## CONCURRING OPINION BY WECHT, J.:

I join in full Judge Strassburger's thoughtful opinion disposing of this case. Given the limited body of Pennsylvania case law addressing after-discovered evidence that emerges during the pendency of a direct appeal of a judgment of sentence, I agree that *Commonwealth v. Rivera,* 939 A.2d 355 (Pa.Super.2007), and *Commonwealth v. Castro,* 55 A.3d 1242 (Pa.Super.2012) (*en banc*), compel a remand for the trial court to review the after-discovered evidence and determine whether it necessitates a new trial.

There is no question that Pennsylvania courts long have applied the four-part test cited by Judge Strassburger to assess the necessity of a new trial in light of evidence discovered after a conviction:

> To obtain relief based on after-discovered evidence, [the] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

Maj. Mem. at 5 (quoting *Commonwealth v. Montalvo,* 604 Pa. 386, 986 A.2d 84, 109 (2009)). "The determination whether an appellant is entitled to a new trial must be made by the trial court at an evidentiary hearing. At the evidentiary hearing, the appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Castro,* 55 A.3d at 1246 (citing *Commonwealth v. Padillas,* 997 A.2d 356, 363 (Pa.Super.2010)). We have applied this test not just in the context at bar but also in post-trial practice and in the context of collateral relief. *See Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265 (1976) (post-trial); *Commonwealth v. Galloway,* 433 Pa.Super. 222, 640 A.2d 454 (1994) (collateral).

Nonetheless, I share the apprehensions expressed by the Honorable Richard B. Klein in *Commonwealth v. Choice,* 830 A.2d 1005 (Pa.Super.2003), regarding our formulation of the test that the trial court is directed to apply in determining whether after-discovered evidence necessitates a new trial:

> [T]he majority relies on that statement repeated so often it has become an adage that, "the evidence will not be used solely for the purposes of impeachment."

> This is proof of the reality of the legal maxim, *"communis error facit jus,"* or "common error, repeated many times, makes law."

> I believe that what we have called a four-prong test is really only a three[-] prong [ ]test. Prong # 3, the "only for impeachment" prong, is just an extension of Prong # 4, that the new evidence would not affect the outcome. Normally, evidence that just would tend to impeach what a witness said would not change the outcome at a new trial.

> A bald statement that evidence that only impeaches would never justify a new trial defies common sense and justice.

Assume, for example, that a defendant is convicted of a robbery when the victim cannot make an identification, and the sole identification is made by a citizen who comes forth later to report that he witnessed the robbery and saw the defendant, whom he recognized. The witness identifies the defendant at trial. Suppose later it is discovered that this witness was an enemy of the defendant and in fact was a prisoner in an out-of-state jail at the time the robbery took place. Under the language of the rule as has been enunciated, this testimony about the witnesses' jailing, proving that it was impossible for him to see what he said he saw, would not be enough to allow a new trial.... Since testimony about the incarceration would "be used solely for the purposes of impeachment," this information would not be considered newly discovered evidence that justifies a new trial.

If one examines the cases that quote the so-called four-prong test, one can see that there is **no** case where the only grounds disqualifying the evidence from being considered after-discovered to warrant relief is the fact that it only impeaches. Actually, Prong # 3 is almost always cited in addition to Prong # 4, which denies a new trial where the evidence is not of such a nature and character that a different outcome is likely. However, a common sense approach is that in **some** cases, impeachment evidence **is** likely to change the result.

*Id.* at 1009–10 (Pa.Super.2003) (Klein, J., dissenting) (footnote omitted; emphasis in original).

Bench and bar alike would benefit from a recognition that the critical inquiry concerns the degree of probative value of the proffered evidence and the likelihood that a different outcome would have resulted had the evidence been available to a defendant at trial. This assessment is one that *trial courts are well-equipped to make* without undue emphasis on sometimes protean terms of art like "impeachment."

My review of this case and the underlying body of Pennsylvania case law also has revealed another source of concern: Our unclear, unstated standard of review for considering the necessity of remanding a case involving after-discovered evidence for trial court consideration.[1] In this context, the four-part test, as such, is not ours to apply; rather, our task is to determine whether to return a case to the trial court for consideration of the new evidence in light of that test. Nonetheless, without an articulated standard of review, it is not difficult to read our cases as though this Court was measuring the after-discovered evidence against the test directly; indeed, we have used precisely such language. *See, e.g., Castro,* 55 A.3d at 1247. (citing our decision in *Rivera,* and characterizing our analysis in that case as one "[a]pplying the four-part after-discovered evidence test"). In short, we have to some extent left open the question of what an appellant must show to persuade us that further fact-finding is required, rendering the task of an appellant in presenting his case for remand to the trial court more difficult than it should be.

Fortunately, our cases tacitly imply a fairly stable standard of review: Our task is to review only the quantum and charac-

---

1. Our standard of review concerning whether a trial court erred in determining whether to award a new trial is well-settled. *See Padillas,* 997 A.2d at 361 (Pa.Super.2010) ("When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." (internal quotation marks omitted)).

ter of the evidence in question, with particular focus on its potentially exculpatory effect in the context of the other evidence adduced at trial. We must ask ourselves whether, if the evidence were credited by the trial court applying the four-part test, that court would have a reasonable basis for ordering a new trial. To do otherwise—to demand a near certainty of the award of a new trial—would be to assess the evidence in place of the fact-finder, precisely the task best left to the trial court.

Our law requiring application of the four-part test to newly discovered evidence has been clear for many years.[2] Hence, absent action by the Pennsylvania Supreme Court, trial courts must continue to apply that test. But in my view, they should do so in the light cast by Judge Klein's comments. In practice, the third and fourth prescribed inquiries tend to collapse into each other. The fourth question, regarding the likelihood of a different result, tends to dominate the entire inquiry. I will go one step further and suggest that the second factor, concerning whether the after-discovered evidence in question would be merely cumulative, similarly is subsumed by the question of prejudice.

Ultimately, it falls to the trial court to assess, under the circumstances of a given case, the necessity of a new trial. That assessment must be informed by the presence of prejudice, *i.e.*, the likelihood of a different result. When after-discovered evidence emerges during the pendency of a direct appeal, we should seek to determine **only** whether the appellant has made out a *prima facie* case to the effect that a trial court reasonably may conclude that a new trial is warranted. While the standard in the trial court is whether the defendant has shown the likelihood of a different outcome at trial by a preponderance of the evidence, *see Castro, supra,* we cannot set the bar so high without encroaching upon the trial court's prerogatives.

I believe that bench and bar alike would benefit from a simplification of the four-part inquiry. It is substantively sound but confusingly stated. As well, this Court would benefit a great deal by distinguishing and defining its standard of review to separate its task clearly from the task of the trial court.

## DISSENTING OPINION BY SHOGAN, J.:

I respectfully dissent.

I believe the Majority, in vacating the judgment of sentence on the basis of this Court's decisions in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa.Super.2007) and *Commonwealth v. Castro*, 55 A.3d 1242 (Pa.Super.2012) *(en banc)*, ignores a crucial element of the four-prong test articulated by our Supreme Court in *Commonwealth v. Chamberlain*, 612 Pa. 107, 30 A.3d 381 (2011).

Specifically, our Supreme Court reiterated that:

**After-discovered evidence** is the basis for a new trial when it: 1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely for impeaching the credibility of a witness; and 4) is of such nature and character that a new verdict will likely result if a new trial is granted.

---

**2.** *See, e.g., Commonwealth v. Schuck,* 401 Pa. 222, 164 A.2d 13, 17 (1960); *Commonwealth v. Green,* 358 Pa. 192, 56 A.2d 95, 97–98 (1948) (substantially applying the same factors without clearly spelling out a four-part test); *Commonwealth v. Carter,* 272 Pa. 551, 116 A. 409 (1922) (same).

*Commonwealth v. Boyle,* 533 Pa. 360, 625 A.3d [A.2d] 616, 622 (1993); *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246 (1988). Further, the proposed new evidence must be "producible and admissible." *Smith* [518 Pa. at 50], 540 A.2d [at] 263; *Commonwealth v. Scott,* 503 Pa. 624, 470 A.2d 91, 93 (1983). *Chamberlain,* 612 Pa. at 163–164, 30 A.3d at 414.

Here, Appellant has failed to demonstrate any other purpose served by Brown's statement beyond the obvious impeachment of co-conspirator Perry's earlier testimony, which had been extensively challenged at trial. Rather than direct where in his brief Appellant offers another use for Brown's statement, the Majority relies on the exculpatory nature of the statement and the fact the statement reflects that Perry, who was not the sole identification witness, perjured himself at trial. The long-standing third element of the after-discovered evidence test should not be ignored.

As our Supreme Court has noted previously: "Recanting testimony is exceedingly unreliable[;] ... There is no less reliable form of proof, especially when it involves an admission of perjury." *Commonwealth v. Anderson,* 466 Pa. 339, 342, 353 A.2d 384, 386 (1976) (internal quotation marks and citations omitted). The four-prong test, as applied to this type of recantation, has as its underpinning the notion that "[i]t is a matter of general knowledge that partners in crime are likely when apprehended to cast the chief blame on each other. It is also equally well known that partners in crime sometimes [do] tell the truth as to the commission of the crime."

*Commonwealth ex rel. Estelle v. Cavell,* 191 Pa.Super. 200, 156 A.2d 615, 618 (1960) (quoting *Commonwealth v. Bubna,* 357 Pa. 51, 53 A.2d 104, 112 (1947)). The third prong ensures that there is some basis, beyond impeachment, on which justice is served by a new trial. As an intended consequence, the third prong stands as an impediment to tactics employed by criminal cohorts to avoid conviction and rescue their partners in crime from the same.

Setting aside the question as to whether Brown's hearsay within hearsay statement would be producible[1] and admissible at trial, and thus result in a different verdict, I cannot conclude that Appellant has met his burden to demonstrate that the statement would be used for any other purpose than to further impeach Perry's trial testimony. Therefore, I would affirm the judgment of sentence.

---

1. Appellant concedes that he has not produced affidavits from Brown, coconspirator Perry, or Agent Majarowitz, establishing their "availability and willingness to cooperate with the defense." Appellant's Brief at 27

(quoting *Commonwealth v. Khalil,* 806 A.2d 415, 422 (Pa.Super.2002), *appeal denied,* 572 Pa. 754, 818 A.2d 503 (2003)). In fact, he concedes he has been unable to locate Brown or Perry. *Id.*