**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 2 EAP 2022 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | 6/04/2021 at No. 1642 EDA 2020 |
| v. | : | (reargument denied 08/17/2021) |
| | : | affirming the Order entered on |
| | : | 08/18/2020 in the Court of Common |
| DONTEZ PERRIN, | : | Pleas, Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0003284- |
| Appellant | : | 2008. |
| | : | |
| | : | ARGUED:  September 13, 2022 |

## OPINION

**JUSTICE MUNDY**                               **DECIDED:  March 21, 2023**

In this appeal by allowance, we are tasked with determining whether the trial court erred in refusing to accept a proposed stipulation as to witness credibility in the context of a post-sentence motion for a new trial.  As we determine that the trial court was well within its right to reject the proposed stipulation, we affirm its denial of Appellant's motion.

In 2010 Appellant Dontez Perrin was convicted after a non-jury trial of conspiracy, aggravated assault, robbery, possessing instruments of crime, simple assault, recklessly endangering another person, receiving stolen property, firearms not to be carried without a license, and possession of firearm by minor[1] for his role in the robbery and assault of

---

[1] 18 Pa.C.S. §§ 907(a), 2701(a), 2705, 3925(a), 6106(a)(1), 6110.1.

the victim Rodney Thompson when Thompson arrived at an apartment to deliver a pizza. The trial court imposed an aggregate sentence of five to ten years' imprisonment.

At Appellant's trial, the Commonwealth presented two witnesses: Thompson and Lynwood Perry, who admitted he participated in the robbery. Relevant to the issue currently before the Court, at Appellant's trial, Perry testified that Appellant participated in the Thompson robbery with him and Amir Jackson. According to Perry, Jackson called to order the pizza, and Jackson and Perry went to wait in the vacant apartment they identified over the phone. When Thompson arrived with the pizza, Appellant came up behind him and pushed him through the apartment door, where he was beaten and robbed by the other two co-conspirators. Perry further acknowledged that he was testifying for the Commonwealth pursuant to a deal with the federal government in hopes of receiving a lighter sentence for federal charges stemming from his participation in the robbery of Thompson along with other robberies.[2]

After Appellant's direct appellate rights were reinstated *nunc pro tunc*, Appellant appealed his judgment of sentence to the Superior Court. While that appeal was pending, the Philadelphia District Attorney's Office (DAO) forwarded to Appellant's counsel communication it had received from the FBI. The document contained a summary of an interview FBI Agent Joseph Majarowitz conducted with Curtis Brown, who had been incarcerated with Perry at the federal detention center. During that interview, Brown stated Perry spoke of testifying against Appellant, and Perry "indicated that he testified that Appellant was involved in the robbery because 'someone had to "go down" for it,' but that Appellant was not actually involved in the crime." *Perrin I*, 59 A.3d at 665.

---

[2] For a complete description of the facts and circumstances underlying Appellant's conviction see *Commonwealth v. Perrin*, 59 A.3d 663 (Pa. Super. 2013) (*Perrin I*), *vacated & remanded*, 103 A.3d 1224 (Pa. 2014) *(per curiam)*.

In light of the Commonwealth's disclosure, Appellant filed a petition with the Superior Court to remand the case for a new trial or to pursue an after discovered evidence petition with the trial court. The intermediate court denied the petition without prejudice to Appellant's ability to raise the issue in his appellate brief. Thereafter, a divided Superior Court panel vacated Appellant's judgment of sentence and remanded for Appellant to "flesh-out his claim" before the trial court with additional evidence. *See id.* at 667.

Complying with the Superior Court's directive, the trial court ultimately conducted an evidentiary hearing on Appellant's after discovered evidence claim.[3] At the evidentiary hearing[4], Appellant presented the testimony of Agent Majarowitz and Brown, but not Perry. As the Superior Court later summarized, Brown testified as follows:

> that he did not know [Appellant] but was cellmates with Perry for about two months at the Federal Detention Center in Philadelphia. He testified that Perry told him that he lied on the stand about [Appellant's] involvement because he was hoping to get a more lenient sentence. Brown testified that he only told Special Agent Majarowitz about Perry because he felt it was the right thing to do, not because he believed that he had to do so to get sentencing consideration in his case.

*Commonwealth v. Perrin*, 11 EDA 2018, 2019 WL 1777409 (Pa. Super. Apr. 23, 2019) ("*Perrin II"I*) (unpublished). The trial court denied Appellant's motion for a new trial, finding that since Appellant did not call Perry to testify, the testimony of Brown and Agent

---

[3] In order to be granted a new trial based on an after discovered evidence claim a Defendant must show the evidence "1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence, 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted." *Commonwealth v. Cousar*, 154 A.3d 287, 311 (Pa. 2017), *citing Commonwealth v. Randolph*, 873 A.2d 1277, 1284 (Pa. 2005).

[4] For a full discussion of the procedural process that led to the evidentiary hearing see *Commonwealth v. Perrin*, 108 A.3d 50 (Pa. Super. 2015) (*"Perrin II"*)

Majarowitz "was hearsay that [Appellant] could only use to impeach Perry's credibility, a purpose prohibited by Pennsylvania precedent." *Id.* at *5. Appellant again appealed.

The Superior Court reversed the trial court's ruling, determining that "Perry was 'unavailable' within the meaning of Pa.R.E. 804[,]"[5] and thus the testimony of Brown and Majarowitz was not excludable hearsay. *Id.* at 7-9. The court granted Appellant relief as follows:

> [W]e vacate the court's order denying [Appellant's] motion for a new trial and remand for the determination of whether Brown's testimony was credible so as to justify a new trial. We note that the original trial court judge who decided [Appellant's] claim is no longer sitting. Hence, on remand we direct the jurist appointed to handle this matter to hold a hearing at which [Appellant] shall present his witnesses again so that the trial court need not rely on a cold record to make its credibility determinations.

*Id.* at *9 (citation omitted).

On remand, the case was scheduled for a hearing on July 30, 2019, but was continued several times at the request of the parties. On February 24, 2020, Appellant and the DAO's Conviction Integrity Unit filed a Joint Memorandum of Law and Stipulations of Fact (Joint Stipulations). The stipulations included:

> 44. Brown testified at the [2017 evidentiary] hearing that:
>
> > He did not know Perrin but was cellmates with Perry for about two months at the Federal Detention Center In Philadelphia. He testified that Perry told him that he lied on the stand about Perrin's involvement because he was hoping to get a more

---

[5] "A declarant is considered to be unavailable as a witness if the declarant is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(B)(2), (3), or (4)." Pa.R.E. 804(a)(5)(B). The Superior Court found Perry's statement was admissible pursuant to Pa.R.E. 804(b)(3)(B) ("The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: … A statement that … is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." *Perrin III*, 11 EDA 2018 at *7-9.

lenient sentence. Brown testified that he only told Special Agent Majarowitz about Perry because he felt it was the right thing to do, not because he believed that he had to do so to get sentencing consideration in his case.

47. The Parties therefore stipulate that, if Brown were called to testify at another evidentiary hearing, his testimony will be consistent with the account he provided at the 2017 evidentiary hearing.

*54. If called to testify a second time, the Parties stipulate that Brown would do so credibly.*

Joint Stipulations, 2/24/2020 at 10-11 (emphasis added). The Joint Stipulations concluded the parties have "resolve[d] the only remaining factual dispute" – Brown's credibility – and since they stipulate "that Perry's testimony can no longer be credited … there is no need" for an evidentiary hearing "to present Brown's or Majarowitz's testimony … a second time." *Id.* at 13-14. The DAO thus conceded that Appellant was entitled to a new trial based on his after discovered evidence claim.

The trial court heard argument on the Joint Stipulations on March 12, 2020. The court did not accept the stipulations and the case was continued for an evidentiary hearing on March 26, 2020, which was canceled due to the Covid-19 emergency. A video status conference was held on July 9, 2020, at which time Appellant objected to the trial court's decision against proceeding by stipulation, which the trial court overruled and rescheduled the evidentiary hearing to take place via video on August 6, 2020. On that date, the trial court convened the evidentiary hearing, at which time the parties again sought to proceed via stipulation, which the trial court again denied. When the trial court called for presentation of evidence by Appellant, his counsel declined, stating that presenting Mr. Brown's testimony would be against her client's best interest, without further elaboration.

The trial court denied Appellant's motion for a new trial, explaining that where the Superior Court's remand carried "specific instructions to hold a hearing at which the

defense 'shall' present its witnesses in order for [the trial] [c]ourt to make credibility determinations[,]" Appellant's refusal to present any witnesses prevented the court "from making the requisite determination as to … Brown's credibility." *Commonwealth v. Perrin*, No. CP-51-CR-0003284-2008, Order, at 2 n.1 (C.P. Phila. 8/18/20). The court further "concluded that the determination of credibility was not amendable to stipulation." *Id.* Appellant appealed to the Superior Court, arguing the trial court erred in denying his motion for a new trial without considering the parties' factual stipulations.

On appeal, Appellant argued the trial court was required to accept the parties' stipulation that Brown was credible. He acknowledged that the Superior Court's prior directive that the trial court hold a hearing to determine Brown's credibility was reasonable at the time, but circumstances changed as the DAO agreed Brown was credible. Thus, according to Appellant, the parties resolved the sole factual question at issue and there was no need to present Brown's (or Agent Majarowitz's) testimony a second time. The DAO concurred in Appellant's argument. A panel of the Superior Court, however, found the trial court did not abuse its discretion in rejecting the parties' stipulation and denying Appellant's request for a new trial absent the presentation of testimony. The panel agreed that "usually, parties may stipulate as to what a witness will testify to, and such a stipulation promotes efficiency in litigation." *Commonwealth v. Perrin*, 1642 EDA 2020, 2021 WL 2288081 at *6 (Pa. Super., Aug. 28, 2020) (unpublished). It found, however, that the parties ignored the court's prior directive that on remand Appellant "**shall** present his witnesses again so that the trial court" could make its own credibility findings. *Id.* at 13 (quoting *Perrin III*, 11 EDA 2018 at *9) (emphasis provided by Superior Court). The panel further found the Joint Stipulations failed to explain why Appellant could not present Brown or Agent Majarowitz at a new evidentiary hearing or how the DAO arrived at its

present position that Perry was not credible, after defending his credibility throughout the case. *Id.* at *13-14.

We granted Appellant's petition for allowance of appeal to address whether "the trial court abuse[d] its discretion in refusing to accept the parties' stipulations regarding the credibility of witnesses[.]" *Commonwealth v. Perrin*, 271 A.3d 1283 (Pa. 2022) (*per curiam*). As the DAO's position is aligned with that of Appellant, we invited the Attorney General to participate in the case as *amicus curiae* and to file a brief and attend oral argument. The Attorney General accepted the Court's invitation and filed a brief and participated in oral argument.

Initially, as this Court has previously explained, the "term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the trial judge." *Commonwealth v. Gill*, 206 A.3d 459, 466 (Pa. 2019) (internal brackets, quotation marks and citation omitted). An appellate court should not disturb a trial court's discretionary ruling absent an abuse of discretion. *See id.* An abuse of discretion is more than merely an error of judgment but is rather the result of an error of law or is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *See Commonwealth v. DiStefano*, 265 A.3d 290, 297 (Pa. 2021) (citing *Gill*, 206 A.3d at 466-67).

The parties and the Attorney General all agree stipulations are a well-established and critical tool for resolving undisputed factual issues. Stipulations help litigants and courts narrow the issues needing to be decided, encouraging judicial economy and conserving the limited resources of courts and litigants alike. There is disagreement, however, on what role, if any, courts should play in determining whether or not to accept factual stipulations proposed by the parties. Appellant and the DAO argue that trial courts are required to accept all factual stipulations proposed by the parties and the courts do

not have any discretion to refuse to accept the proposed stipulations. In their view, factual stipulations are binding and conclusive on a trial court. Appellant's Brief at 13 (*citing Mader v. Duquesne Light Co.*, 214 A.3d 600, 615 (Pa. 2020)); DAO Brief at 28 (citing *Commonwealth v. Mathis*, 163 A.2d 1167, 1171 (Pa. Super. 1979); *Falcione v. Cornell Sch. Dist.*, 557 A.2d 425, 428 (Pa. Super. 1989)). Thus, in their view, once parties stipulate to certain facts, the trial court is obligated to accept them as true since, in Appellant's words, "courts resolve factual disputes between parties, they do not create them where none exist." Appellant's Brief at 14. The DAO goes further, arguing that if trial courts were permitted to reject factual stipulations proposed by the parties, the courts would be invading a prosecutor's decision in what manner to prove their case, violating the principle of prosecutorial discretion. DAO Brief at 34.

In Appellant's and the DAO's view, this precept extends to stipulations pertaining to witness credibility. Appellant posits that there is no distinction between factual stipulations and stipulations as to credibility because when parties stipulate that a witness will testify a certain way, they do so with the understanding that the witness will also testify credibly. Appellant's Brief at 15. The DAO recognizes that when credibility is disputed, credibility determinations fall in the purview of the trial court, but that is not the case when the parties are in agreement. DAO Brief at 34, 36. Stipulations hold little value if the credibility of the evidence remains in question and permitting trial courts to disregard such stipulations would burden both the parties and the courts. *Id.* at 40.

Appellant and the DAO both rely on the Superior Court's prior decision in *Commonwealth v. Williams*, 215 A.3d 1019 (Pa.Super. 2019). In *Williams*, the defendant had been convicted of various drug and firearms offenses in a non-jury trial. *Williams*, 215 A.3d at 1022. The sole witness at Williams's trial was the arresting officer. *Id.* After his sentence became final, he was informed by the Commonwealth of serious allegations

of misconduct by the arresting officer. *Id.* Williams in turn filed a PCRA petition and the Commonwealth agreed he was entitled to PCRA relief. *Id.* Prior to an evidentiary hearing on Williams's PCRA petition, he and the Commonwealth entered into stipulations regarding the arresting officer's misconduct, indicating that similarly situated individuals had been granted relief, and reflecting that the Commonwealth no longer stood by the arresting officer's credibility. *Id.* at 1025.

The PCRA court, however, denied relief. *Id.* at 1022. On appeal, the Superior Court reviewed the evidence, including the stipulations and witness affidavits Williams submitted at his evidentiary hearing, and determined the PCRA court erred by denying Williams' petition. Unlike the proposed stipulations at issue herein, the stipulations in *Williams* did not assert a potential witness at an evidentiary hearing would testify credibly. *See id.* Further, again unlike Appellant, the defendant in *Williams* submitted evidence beyond the stipulations at his evidentiary hearing, specifically two witness affidavits and testimony detailing how he was being treated differently than other similarly situated individuals. *See id.* The issue before the Superior Court in *Williams* was whether the PCRA court erred in denying Williams's after discovered evidence claim based on the entire record before it and not whether the PCRA court erred in rejecting a proposed stipulation as to a potential witness's credibility. As there was no proposed stipulation to witness credibility in *Williams*, it does not speak to the issue currently before the Court and the parties' reliance on it is unpersuasive.

The Attorney General, on the other hand, argues that while stipulations, even those related to credibility, play a vital role in the criminal justice process, trial courts should retain the discretion to decline to accept factual stipulations regarding ultimate, dispositive issues of fact. Attorney General Brief at 17. This is especially true in criminal matters where the prosecution and the defense, the stipulating parties, are not the only parties

with an interest in the outcome of the case. *Id.* at 20-21. In the Attorney General's view, the issue currently before the Court is analogous to the one we addressed in *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018). *Brown* involved the trial court's denial of PCRA relief in a capital case. On appeal to this Court, the parties attempted to stipulate that the petitioner was entitled to sentencing relief due to ineffective assistance of his trial counsel. According to the Attorney General, this Court rejected the parties' proposed stipulation, holding that, after a criminal conviction, "neither the parties, by agreement, nor this Court absent a finding of legal error, have the power or ability" to disturb the verdict. Attorney General Brief at 17 (quoting *Brown*, 196 A.3d at 144). The Attorney General continues that we rejected the Commonwealth's prosecutorial discretion argument by holding that "[p]rosecutorial discretion provides no power to instruct a court to undo the verdict without all necessary and appropriate judicial review." *Id.* (quoting *Brown*, 196 A.3d at 146). The Attorney General contends that our reasoning in *Brown* applies equally to the case *sub judice*, where the parties attempted to bind the trial court to a factual stipulation that dictated a specific legal conclusion, that Appellant was entitled to a new trial. In the Attorney General's view, any attempt to distinguish the scenarios based on a factual rather than legal stipulation is a distinction without a difference.

In order to prevent the parties from circumventing the courts' reviewing authority, the Attorney General favors recognizing that trial courts retain discretion to accept or reject factual dispositive stipulations. This would permit trial courts to determine if a hearing is required, despite the parties' protestations. Attorney General Brief at 25. In such a scenario, the trial court would be the arbiter of whether or not the verdict should be overturned, exercising judicial review.

We agree with the parties that factual stipulations are an integral and valuable part of our judicial system. When parties can agree to narrow the factual disagreements at

issue, courts should encourage their effort. Factual stipulations help conserve the limited resources of both the courts and the parties and can ease strain on a burdened judicial system. As such, courts should generally willingly consider factual stipulations proposed by the parties. Courts, however, retain an important role in overseeing the administration of the judicial process and cannot be relegated to a mere rubber stamp for the parties.

"A stipulation is a declaration that the fact agreed upon is proven [, and a] valid stipulation must be enforced according to its terms." *Commonwealth v. Mitchell*, 902 A.2d 430, 460 (Pa. 2006) (quoting *Commonwealth Rizzuto*, 777 A.2d 1069, 1088 (Pa. 2001)). Therefore, for a stipulation to be enforceable it must be valid. While parties have wide latitude to enter into valid and enforceable stipulations, that ability is not unfettered. For example, parties cannot stipulate to matters affecting the jurisdiction, business, or convenience of the courts. *Mader v. Duquesne Light Co.*, 241 A.3d 600 (citing *Northbrook Life Ins. Co. v. Commonwealth*, 949 A.2d 333, 337 (Pa. 2008)). These areas are not subject to stipulation by the parties as they are inherently and traditionally the prerogative of the judiciary. Determinations of witness credibility affecting a post-sentence motion for a new trial, like the situation at bar, similarly belong to the court as the finder of fact. *See Commonwealth v. Mitchell*, 141 A.3d 1277, 1282 (Pa. 2016) (emphasizing the PCRA court's "exclusive prerogative to make credibility determinations"); *see also Commonwealth v. Sanchez*, 36 A.3d 24, 26-27 (Pa. 2011) ("The finder of fact – here, the jury – exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.") (citing *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004)). A trial court considering a defendant's post-sentence motion for a new trial sits as the finder of fact and judges whether the evidence supports the defendant's request. As such, the question of witness credibility in such a scenario is in the sole prerogative of the trial court. The parties accordingly do not have the

authority in post-verdict litigation to enter into a valid and enforceable stipulation as to any potential witnesses' credibility and bind the court thereto, as that would interfere with the role of the post-verdict court.

This Court has previously held that "the parties may stipulate, and be bound by their acts as the law of the case, in all matters affecting them without affecting the jurisdiction and prerogatives of the court." *Foley Bros. v. Commonwealth Dep't of Highways*, 163 A.2d 80, 83-84 (Pa. 1960). Once a guilty verdict is handed down in a criminal case, however, the matter no longer solely affects the parties. At that point the community has an interest in the verdict. *See Brown*, 196 A.3d at 146 ("A representative cross section of the community has issued its decision, and the prosecutor, having sought and obtained the death sentence, may not thereafter unilaterally alter that decision. The community now has an interest in the verdict, which may thereafter be disrupted only if a court finds legal error.");[6] *accord State v. Tangalin*, 657 P.2d 1025 (Haw. 1983) ("[I]t is well established that matters affecting the public interest cannot be made the subject of stipulations so as to control the court's action with respect thereto. Criminal cases are *per se* matters affecting public interest and so the court's determination of credibility cannot be controlled by the parties' stipulations."). As the community in the post-sentence timeframe has an interest in the case, a stipulation purporting to establish witness credibility in a post-sentence motion for a new trial is not one that solely affects the parties. Where, as here, a defendant files a post-sentence motion for a new trial based on an after discovered evidence claim, the defendant must meet four specific requirements. *See supra* at 3, n.3 (setting forth requirements for an after discovered evidence claim). In

---

[6] *Brown* addressed a situation where a defendant was challenging a jury's imposition of the death penalty, while the verdict in the case *sub judice* was issued by the trial court after a non-jury trial. The community's interest in the verdict is the same in either case, as it stems from the entry of the verdict rather than how that verdict was reached.

such circumstances, the trial court sits as the finder of fact and the sole arbiter of issues of witness credibility. *See Mitchell*, 141 A.3d at 1282. That being the case, any attempt by the parties to force the trial court to accept a proposed stipulation as to witness credibility does not solely affect the parties and intrudes on the jurisdiction and prerogative of the court. Parties cannot require the court to accept any such stipulation as binding during post-verdict fact-finding.[7]

Appellant was convicted by the trial court after a non-jury trial. He then ultimately filed a post-sentence motion for a new trial. The determination of whether he was entitled to relief laid in the discretion of the trial court. As the factfinder, the trial court had sole authority to make determinations as to witness credibility. As such, the parties' attempt to stipulate as to Brown's credibility intruded into the trial court's jurisdiction and prerogative. Thus, the Joint Stipulations purporting to stipulate that Brown would testify credibly was neither valid nor enforceable. The trial court, therefore, did not abuse its discretion in refusing to accept the parties' proposed stipulation. The order of the Superior Court is affirmed.[8]

---

[7] We do not address the question of whether the trial court, in its discretion, may accept a proposed stipulation as to witness credibility as that is not the circumstance currently before the Court. The Court's "adjudicatory process is structured to cast a narrow focus on matters framed by the litigants before the Court in a highly directed fashion, and, as such, we sit to decide concrete cases." *D.P. v. G.J.P.,* 146 A.3d 204, 217 (Pa. 2016) (internal quotation marks and citations omitted) (stating that consideration of the constitutionality of a portion of the custody statute granting grandparents standing in certain circumstances that were not at issue in the case should be left for a case where the issue was squarely before the Court).

[8] We note that in addition to the question of whether the parties can force the trial court to accept a stipulation as to witness credibility, this case also includes the additional circumstance of the directive by the Superior Court to the trial court to hold a hearing to assess the witnesses' credibility. Appellant argues that the trial court was not bound by this directive due to a change in circumstances, *i.e.*, the parties' agreement that Brown's testimony was credible. The DAO's advocacy, on the other hand, does not address the Superior Court's directive. Neither party offers any support for the premise that the trial court was free to ignore the Superior Court's directive let alone that the parties had the (continued…)

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Brobson join the opinion.

Justice Dougherty files a concurring opinion in which Justice Wecht joins.

The Late Chief Justice Baer did not participate in the decision of this matter.

---

authority to mandate that the trial court do so.  We need not reach this issue as we have resolved the issue raised herein on a different basis.